RAY F. GERMAN AND ANOTHER v. D. S. McKAY.[1]

May 11, 1917.

Nos. 20,261—(82).

**Deed — priority — findings sustained.**

　　1. The evidence supports the findings that a deed, by which the defendant procured title to certain property, was duly executed, delivered, and recorded prior to a deed of the same property executed by the same grantor to plaintiffs, and that the first-mentioned deed was executed and delivered by the grantor with full knowledge of its contents and with intent to convey his interest in said property to defendant, that the transaction was not tainted with fraud or misconduct of any kind, and that defendant thereby became owner of the premises conveyed by the deed.

**Issue not raised nor litigated.**

　　2. The evidence does not disclose any basis for the contention that the deed to defendant was an attempted testamentary disposition of the premises therein described, nor was such issue raised by the pleadings.

**Exclusion of evidence.**

　　3. Error cannot be predicated upon the exclusion of evidence relating to matters which are not open to dispute.

Action in the district court for St. Louis county to set aside a deed. The case was tried before Cant, J., who made findings and ordered judgment in favor of defendant. From an order denying their motion to amend the findings and for a new trial, plaintiffs appealed. Affirmed.

　　*Colin W. Wright,* for appellants.

　　*Theodore Hollister,* for respondent.

Holt, J.

Plaintiffs sued to set aside as void a deed purporting to convey two lots in Duluth, Minnesota, to defendant. Defendant by his answer asserted the validity of the deed, claimed absolute ownership of the two

　　[1]Reported in 162 N. W. 527.

lots therein described, alleged possession and asked that plaintiffs' adverse claim be determined. The decision was for defendant and plaintiffs appeal from the order denying a new trial.

The complaint alleges that on July 2, 1915, Joseph Barcume conveyed an undivided half of lots 2 and 3, block 14, Central Division of Duluth to plaintiffs, that the prior quitclaim deed purporting to be executed by Barcume to defendant was a forgery, either as to the grantor's signature or else that defendant, one Ross, and other persons to plaintiffs unknown, unlawfully conspired together to deprive Barcume of said lots by fraudulently inducing him to sign an instrument quitclaiming 80 acres of land to defendant which when obtained was wrongfully altered by inserting the description of the two lots mentioned. In other words, the signature of Barcume is claimed to be a forgery, and, if that be not so, then the instrument has been fraudulently altered after its execution and delivery by inserting the lots in controversy.

The genuineness of Barcume's signature to defendant's deed is now conceded. But it is earnestly insisted that the evidence of the alleged alteration or forgery by the addition of the two lots after the delivery of the deed, or a surreptitious insertion of the same without the grantor's knowledge before the execution, is so strong and convincing that the findings to the contrary should be set aside. The trial developed that about 1897 Joseph Barcume and defendant entered into a partnership to conduct a feed and hay business at Duluth as equal partners. Defendant from that time on conducted the business personally, except as he might have consulted with Barcume on his occasional visits to Duluth or by correspondence. Barcume during all the time resided at Bloomer, Wisconsin. The business of the partnership prospered. From the undivided profits some real estate was bought, and among it were these two lots, generally referred to as the warehouse property. The business was conducted upon the lots from the time of their purchase until 1912, when it was discontinued and the premises leased. In January, 1915, Barcume was suffering from an illness which physicians diagnosed as cancer of the stomach. An operation was then attempted, but abandoned because of the advanced stage of the disease. Defendant and other friends of Barcume were informed that death would likely come within six months.

He recovered from the effects of the attempted operation and went about his business, being a banker and also interested in some factory at Bloomer. April 21, 1915, he came to Duluth, in response to an invitation from defendant indicating that a purchaser had been procured for the 80-acre tract described in the deed in question, in which the two partners and another person were jointly interested, and that the deal could be closed. The supposed purchaser backed out. When this happened Barcume, according to defendant's version, said that the land was not of great value, and he would give it to defendant and in that connection also the warehouse property, since he, Barcume, considered he had had such generous returns from the business conducted in the main by defendant. To carry out this intention, they, on April 22, 1915, went to the office of John G. Ross, a mutual friend then clerk of the municipal court in Duluth, who prepared a deed of the land and lots, Barcume being the grantor and defendant the grantee therein. The deed was duly executed, and at once, in Mr. Ross' presence, delivered by Mr. Barcume to the grantee in person. Defendant testified that it was understood between them that he would send Barcume one-half of the rent from the property during the latter's life-time and not record the deed until after his death. Barcume died in the early morning of July 4, 1915. During the evening of July 2, he executed a deed to plaintiffs of the two lots in question. They were his nephews. By will or deed he provided for other relatives. Plaintiffs receive very little, unless the deed to them conveyed a good title to the warehouse property. Defendant was at the deathbed of Barcume, but returned to Duluth on the fourth of July. He did not come back for the funeral, giving illness as excuse. He recorded his deed July 6, 1915, at 8:30 in the forenoon. The register of deeds' office was closed on the fifth, that day being kept as a holiday since the fourth fell on Sunday.

The deed to defendant was a gift, so was the subsequent deed to plaintiffs. The motive prompting a gift would appear as strong and sufficient in the one case as in the other. It is not surprising that Barcume, with neither wife nor children to leave his property to, should have been inclined to give a part to a friend and partner of many years' standing. No doubt he recognized that not only the part he thus concluded to give was acquired through the efforts of defendant, who carried nearly the

whole responsibility of the partnership business, but that other property and many thousands of dollars in cash had come to him from the profits of the business conducted by defendant single handed. The only strange act is that, with knowledge of the deed to defendant, he should have executed a deed of the same property to plaintiffs. Whether this was due to failing memory as death approached, or because he thought he could change what had been done, cannot now be known and is unimportant. For if the deed to defendant conveyed title when he received it, plaintiffs took nothing under their subsequent deed. The court found that the deed from Barcume to defendant was executed and delivered by the grantor with full knowledge as to its contents, and with intent to convey all interest he then had in the two lots mentioned to defendant and that the transaction was not tainted with fraud, misrepresentation or misconduct of any kind. We think this finding is sustained by the evidence. That Barcume intended to give and convey the warehouse property to defendant by the deed of April 22, 1915, and that that property was described in the deed when it was executed by him is testified to not only by defendant, but by Mr. Ross, who drew the deed and took the acknowledgement, and by Miss Walker who assisted in comparing the description therein with that in the two prior deeds in the chain of title to the premises, and who knew the parties and property and was informed that by the deed defendant received quite "a windfall." There is nothing to discredit the apparently disinterested and candid testimony of the two witnesses just mentioned. There is some testimony tending to show that defendant was informed, on the evening of July 2, that Barcume was then about to give the deed to plaintiffs, that he sought to delay the matter and said nothing of his own deed. All this defendant denies. There is also testimony that Barcume at different times expressed a purpose to give the warehouse property to plaintiffs. But so there is that he, as early as 1912, expressed an intention to give it to defendant or his family. After all, these are minor matters and were for the consideration of the trial court on the main and controlling issue, the validity of the deed of April 22, 1915. And as to that we are unable to say that the learned trial court did not come to a correct conclusion.

The argument is made that the deed to defendant was not a conveyance but an attempted testamentary disposition of property and void.

The pleadings do not raise this issue, nor does the evidence furnish a basis for making it. The deed was delivered to and accepted by defendant personally. This presently vested the title to the property in him. The fact that he agreed to withhold it from record until after the death of the grantor, and promised to give one-half of the rent to the grantor as long as the latter should live, does not prove or tend to prove the instrument to be an attempted testamentary disposition of the property. Not the slightest suggestion of an intention is to be found that the title was put in defendant in trust, or for some temporary purpose, or to serve the grantor's convenience, or be subject to his control. Appellants cite Conrad v. Douglas, 59 Minn. 498, 61 N. W. 673, and Rennebaum v. Rennebaum, 78 N. J. Eq. 427, 428, 79 Atl. 309. The cases are not in point. In the one the grantee admittedly held title in trust for the grantor, and in the other the court found that the grantee never accepted the deed.

Error is assigned upon the exclusion of testimony as to what Barcume stated to his housekeeper about the state of his health just before going to Duluth on April 21, 1915, and during the trip, also the offer to prove that he suffered violent vomiting attacks lasting during the night after his return and the next day, and that he, before his operation in January, 1915, was accustomed to read a good deal, but that subsequent thereto he was unable to read very long at a time. That Barcume was afflicted with a serious malady during the period stated was conceded by all. One of the symptoms of this disease, known even to laymen, would be attacks of vomiting. Counsel for plaintiffs disclaimed any attempt to question the soundness of Mr. Barcume's mind, but desired this testimony to be received for the purpose of leading to the inference that because of his physical suffering he fell more readily for defendant's fraud. We agree with the trial court that the rejected testimony could serve no useful purpose, for it could add nothing to what the record already disclosed concerning Barcume's illness.

We fail to find any error.

Order affirmed.