# DELMA SCHMITT v. PERCY F. EMERY AND OTHERS.[1]

January 16, 1942.

No. 32,784.

[1]Reported in 2 N. W. (2d) 413.

*Bundlie, Kelley & Finley* and *Atwood & Quinlivan,* for appellant.

*Freeman & King,* for respondents Percy F. Emery and Henry LeRud.

*Hoke, Cobb & Janes* and *Henry A. Sullivan,* for respondents Northland Greyhound Lines, Inc. and George A. Pentz.

PETERSON, JUSTICE.

This is an action to recover for personal injuries sustained in an automobile collision on the night of February 2, 1939. Plaintiff was a guest passenger in the Ford automobile of her husband, which he was driving on a U. S. trunk highway in a generally easterly direction. After he had reached a point a short distance east of Clear Lake, he passed the Buick automobile of the defendant Emery, which was being driven at the time by the defendant LeRud. After he passed the Buick, the Ford collided with a westbound bus of the defendant Northland Greyhound Lines, Inc., which caused the Ford also to collide with the Buick.

The highway had two paved lanes on which there were patches of snow and ice which made it slippery and driving hazardous. There was a conflict in the evidence as to whether the lights on the Buick were on and whether it was moving or standing still. The bus was on its right side of the road. The defendant Pentz, the driver of the bus, saw the Ford approaching from the west on its right side of the highway 600 feet distant and 300 feet behind the Buick. At that time the bus was going about 40 or 50 miles per hour and the Ford about 40 or 45 miles per hour. In passing the Buick, the Ford turned onto the left side of the road directly in front of the bus, which Pentz estimated was then about 150 feet east of the Buick. The Ford started to skid either as it was passing the Buick or immediately after it got back on its right side of the road in front of the Buick. The rear end of the Ford swung around onto the left side of the road, where it collided with the bus. The bus hit the Ford with such impact as to force it back against the Buick, which was about 100 feet behind the Ford when the collision took place.

The negligence charged is that the driver of the bus failed to exercise due care to avoid the collision. While the evidence is conflicting, there is testimony that when Pentz saw the Ford some 600 feet away he took his foot off the accelerator, and that, when the Ford swung around the Buick, Pentz applied the brakes so as to reduce the speed of the bus to about 30 miles per hour. He swung

the bus to his right so that its right side was on the shoulder and finally brought it to a stop in a snowbank.

Plaintiff claims that before the accident the Buick was standing still without the lights on. As a consequence, she claims that her husband did not see it until he was close to it and thus was confronted with an emergency, which necessitated his passing it on the left to avoid a collision. To substantiate the claim, she subpoenaed *duces tecum* one Quinn, who was in charge of Northland's claim department, and demanded that he produce a written statement which Pentz made immediately after the accident in which he stated that the Buick appeared to be standing still and had no lights on. The testimony showed that Quinn had taken the statement after consultation with and by direction of the company's attorneys and immediately turned it over to them for use in anticipation of litigation arising out of the collision. Northland and Pentz objected to the production of the statement as being a communication made by a client to his attorney which was privileged under Mason St. 1927, § 9814(2). The other defendants objected upon the ground that as to them the statement was hearsay.

Pentz testified that at the time he made the statement he expected Northland to defend him in case he was sued. Although there was no explicit prior arrangement that the company would defend him, he assumed that it would. This it did.

At first the court overruled the objection and tentatively received the statement in evidence. Being in doubt, the court directed counsel to prepare and make an argument on the point, for which purpose he adjourned the trial over a week end. For convenience of counsel for Emery and LeRud in preparing their argument, counsel for Northland and Pentz furnished them with a copy of the statement. After full argument, the court excluded the statement as privileged upon the ground claimed.

Plaintiff offered to show by one Fesenmeyer, a state highway patrolman, that Pentz stated, but not in the presence of defendants Emery and LeRud, that the Buick appeared to be standing still without any lights. The offer was excluded upon objection by

such defendants that as to them the statement was hearsay. The next witness was another highway patrolman, one Wicktor, who testified that Pentz made the purported statement and that both he and Fesenmeyer signed a report of the accident showing the statement. The report was received as an exhibit. Fesenmeyer was not recalled for the purpose of again interrogating him concerning either the statement or the report.

The court instructed the jury at the request of the defendants Emery and LeRud that the testimony of one Tabert, to the effect that Pentz stated to him that the Buick was stalled and had no lights on, was to be considered as not binding on those defendants and that "it was admitted only for the purpose of showing the credibility of the witness." Instructions of like import were given as to similar testimony of Wicktor and one Fitzsimmons.

The court also instructed the jury that Northland and Pentz did not discover that the plaintiff was in a position of peril until Pentz actually saw the Ford turn from behind the Buick onto the north lane of travel; that Pentz was entitled to assume until the contrary appeared that the driver of the Ford "would give the bus one-half of the main travelled portion of the highway," and that "one suddenly confronted by a peril through no fault of his own, who, in the attempt to escape, does not choose the best or safest way, should not be held negligent because of such choice, unless it was so hazardous that the ordinarily prudent person would not have made it under similar conditions."

The jury returned a verdict in favor of defendants. Plaintiff appeals from the order denying her motion for a new trial.

Numerous assignments of error are made which relate mainly to rulings on the admissibility of evidence and the instructions to which we have referred. Such further statement concerning the facts and the reasons urged in support of plaintiff's contentions as may be necessary will be made in connection with consideration of them.

■ Mason St. 1927, § 9814(2), provides that "an attorney cannot, without the consent of his client, be examined as to any com-

munication made by the client to him or his advice given thereon in the course of professional duty; * * *" The question here is whether or not the statement obtained from Northland's employe, Pentz, by its claim agent, upon the advice and direction of its attorneys, in anticipation of litigation that might result from the accident, and delivered by the claim agent to the attorneys for such use, is a communication between attorney and client. An attorney cannot be compelled without the client's consent to produce or disclose the contents of a document entrusted to him by his client to be used in conducting a litigation. Lindahl v. Supreme Court I. O. F. 100 Minn. 87, 110 N. W. 358, 8 L.R.A.(N.S.) 916, 117 A. S. R. 666 (letter to beneficiary by insured that he intended to commit suicide); Davis v. N. Y. O. & W. Ry. Co. 70 Minn. 37, 72 N. W. 823 (letters and telegrams concerning claim for negligent transportation of freight); Stokoe v. St. P. M. & M. Ry. Co. 40 Minn. 545, 42 N. W. 482 (release by plaintiff of a claim for personal injuries claimed to have been fraudulently procured).

Because it is so often necessary for clients to communicate with their attorneys with the assistance or through the agency of others, as well as by their own personal action, the privilege extends to a communication prepared by an agent or employe, whether it is transmitted directly to the attorney by the client or his agent or employe. Of course the privilege is limited to the necessities of the situation. Where a document is prepared by an agent or employe by direction of the employer for the purpose of obtaining the advice of the attorney or for use in prospective or pending litigation, such document is in effect a communication between attorney and client. The client is entitled to the same privilege with respect to such a communication as one prepared by himself. The agent or employe as well as the attorney is prohibited from testifying with respect thereto without the client's consent. In re Klemann, 132 Ohio St. 187, 5 N. E. (2d) 492, 108 A. L. R. 505; Ex Parte Schoepf, 74 Ohio St. 1, 77 N. E. 276, 6 L.R.A.(N.S.) 325; Davenport Co. v. Penn. R. R. 166 Pa. 480, 31 A. 245; 5 Jones, Commentaries on Evidence, § 2174. Numerous decisions in England

hold that such documents are privileged as communications between attorney and client. Ankin v. London and N. E. Ry. Co. [1930] L. R. 1 K. B. D. 527; *The Hopper No. 13* [1925] L. R. Prob. Div. 52.

Plaintiff relies on C. St. P. M. & O. Ry. Co. v. Kulp (8 Cir.) 102 F. (2d) 352, 356, 133 A. L. R. 1445, where a report by a conductor made in the regular course of duty under a rule of a railroad company concerning physical circumstances within his knowledge and containing an opinion that the deceased, a brakeman, "was on top of train and was knocked off" by a telltale, was held admissible as a declaration binding upon and substantive evidence against the railroad. Other similar cases are also cited. In the Kulp and the other cases cited no question of privilege between attorney and client was involved. Such cases are not in point.

Furthermore, there is a distinction, often difficult to make in practice, between documents prepared as records by an employe pursuant to the employer's direction in the regular course of business and those prepared under the direction and advice of the attorney as a communication for use in connection with his rendition of professional service. The one is a business record without privilege of any sort; the other a communication between attorney and client. Adam Steamship Co. Ltd. v. London Assur. Corp. [1914] L. R. 3 K. B. D. 1256; Birmingham & Midland M. O. Co. Ltd. v. London & N. W. Ry. Co. [1913] L. R. 3 K. B. D. 850.

■ By its counsel's furnishing a copy of the statement to counsel for Emery and LeRud for use in preparing their argument, Northland did not waive the privilege. At that time the court had disallowed the claim of privilege and tentatively received the statement in evidence. Being in doubt and desiring aid, the court directed counsel to prepare an argument on the admissibility of the statement before making a final ruling.

Apparently counsel for Northland and Pentz and those for Emery and LeRud combined their efforts in the common cause to exclude the statement by establishing the privilege which had been lost tentatively because of the court's ruling. True, Emery and

LeRud claimed that the statement was hearsay as to them; but they were more interested in excluding the statement entirely than limiting its effect as to them. It affirmatively appears that Northland and Pentz did not intend to waive, but to establish, their right to the privilege. They asserted and insisted on it by every means at their disposal. The purpose of furnishing counsel a copy was not to disclose its contents. It was furnished solely to accommodate them and thereby to enable them to make their effort and aid more effective in the common cause of excluding the statement. The copy was furnished solely for that limited purpose. Where an attorney furnishes a copy of a document entrusted to him by his client to an attorney who is engaged in maintaining substantially the same cause on behalf of other parties in the same litigation, without an express understanding that the recipient shall not communicate the contents thereof to others, the communication is made not for the purpose of allowing unlimited publication and use, but in confidence, for the limited and restricted purpose to assist in asserting their common claims. The copy is given and accepted under the privilege between the attorney furnishing it and his client. For the occasion, the recipient of the copy stands under the same restraints arising from the privileged character of the document as the counsel who furnished it, and consequently he has no right, and cannot be compelled, to produce or disclose its contents. Enthoven v. Cobb, 5 DeG. & Sm. 595, affirmed, 2 D. M. & G. 632. Consequently, counsel for Emery and LeRud acquired only the limited right to use the copy for the purpose of the argument to exclude the statement. Otherwise Northland's privilege was in no respect waived or impaired. Counsel for Emery and LeRud cannot be compelled without Northland's consent to produce or disclose the copy.

■ Where a party refuses to produce a document which is privileged as a communication between him and his attorney, the opposing party, if he has given due notice to produce, may show the contents thereof by parol testimony. Stokoe v. St. P. M. & M. Ry. Co. 40 Minn. 545, 42 N. W. 482, *supra*. Plaintiff contends that

she had the right to prove the contents of the statement by the copy furnished to counsel for Emery and LeRud. The parol evidence to prove the contents of a privileged document must itself not be privileged. Here, Northland's privilege precludes a disclosure of the statement either by the copy or the oral testimony of counsel for Emery and LeRud for the reasons just stated. Enthoven v. Cobb, 5 DeG. & Sm. 595, affirmed, 2 D. M. & G. 632, *supra.*

■ It was error to exclude the testimony of Fesenmeyer that Pentz stated that the Buick appeared to be standing still without any lights on. The testimony may not have been admissible against Northland, Emery, and LeRud, but that was no reason for excluding it. Where testimony is admissible as to one of several defendants, it should be received with the right of the other defendants upon a proper request to have the jury disregard it as to them. Klein v. Pasch, 153 Minn. 291, 190 N. W. 338. But, under the circumstances, the error was without prejudice. The very next witness, Wicktor, gave testimony which was the same as that proposed to be given by Fesenmeyer. He produced the report of the accident signed by both of them. Thus, Fesenmeyer's version of the matter was clearly before the jury. Error in excluding evidence does not require a reversal where the fact is otherwise satisfactorily proved. German v. McKay, 136 Minn. 433, 162 N. W. 527. The showing here as to the statement to Fesenmeyer was as satisfactorily established by the testimony of Wicktor and by the statement as if Fesenmeyer had testified to the fact. If plaintiff deemed it important that Fesenmeyer should also add his oral testimony to that of Wicktor and the report, it was, under the circumstances, incumbent on plaintiff to recall Fesenmeyer as a witness and renew the offer of his testimony. It must have been apparent that such a request would have been granted as a matter of course.

■ The testimony of one Tabert that Pentz stated to him that the Buick was standing without lights on was received, but on objection by defendants Emery and LeRud the court indicated that

it was hearsay as to them and would be received only to impeach Pentz, by showing his inconsistent statements. Thereupon plaintiff insisted that the testimony was admissible as an admission against Pentz. The court let the matter rest with the statement that it would rule on it later, but no formal ruling was made. The jury was instructed that the statements of Pentz to Tabert and Wicktor and one of the same tenor to the witness Fitzsimmons were not binding upon Emery and LeRud and were received not to show their negligence, but to impeach Pentz by proof of prior inconsistent statements. This is claimed to be prejudicial, because Pentz's conduct and the degree of care which he should have exercised would have been considerably different had he not been aware of the parked or stalled condition of the Buick. But the fact is established beyond dispute that he saw both the Buick and the Ford prior to the accident. Whether the lights on the Buick were on was therefore not important. Eight eyewitnesses, four of whom were occupants of the Buick, testified that it was moving slowly. Plaintiff, in response to an inquiry whether she knew if it was moving or standing still, answered, "It appeared to be still."

At the close of the charge the court asked counsel if he had omitted anything or if there were any objections. Plaintiff remained silent. It is quite clear that the court had overlooked in the charge plaintiff's claim that Pentz's several statements were admissions as against him.

The instructions limiting the effect of Pentz's statements were right as to all defendants other than Pentz. As to him, they were erroneous, since the statements were admissions, and consequently substantive evidence against him. Doyen v. Bauer, 211 Minn. 140, 300 N. W. 451. But, no separate relief as to Pentz was demanded on the motion for new trial and on the appeal. Plaintiff demands a new trial as to all defendants, not as to Pentz separately.

The alleged error relates only to the limitation of the effect of the statements as to Pentz. At most, this was a subsidiary question. The main issues were correctly submitted. Furthermore, it is plain that the court intended to take up again the matter of

which complaint is now made, and that, when the court invited suggestions from counsel, it had overlooked the matter. Under the circumstances, it was the duty of counsel for plaintiff to speak, and, having failed to do so, they cannot rely thereon for a reversal on appeal. State v. Sprague, 201 Minn. 415, 276 N. W. 744.

No claim was made below or here that the *res gestae* rule applied. See Odegard v. Connolly, 211 Minn. 342, 1 N. W. (2d) 137; Linderoth v. Kieffer, 162 Minn. 440, 203 N. W. 415.

■ We think that the instruction that Pentz, and consequently Northland, did not discover plaintiff in a position of peril until he saw the Ford turn from behind the Buick onto the north lane of travel was correct. There is no evidence to sustain a contrary view.

■ Likewise, we think that the instruction that Pentz was entitled to assume that the driver of the Ford would give the bus the use of the north lane and was entitled to rely on that assumption until the contrary appeared was correct. A driver of an automobile has the right to assume that the driver of another automobile will exercise due care by complying with the applicable provisions of law and that he may act upon that assumption until the contrary appears. Litman v. Walso, 211 Minn. 398, 1 N. W. (2d) 391; Becker v. Northland Transp. Co. 200 Minn. 272, 274 N. W. 180, 275 N. W. 510. See Dohm v. R. N. Cardozo & Bro. 165 Minn. 193, 206 N. W. 377.

■ The driver of an automobile confronted by a sudden peril through no fault of his own should not be held negligent because he does not choose the best or safest way to escape, unless the choice involves hazards that no ordinarily prudent person would have incurred under similar circumstances. Dahlstrom v. Hurtig, 209 Minn. 72, 295 N. W. 508; Smith v. Carlson, 209 Minn. 268, 296 N. W. 132. The instruction involved here embodied the rule enunciated by our decisions.

The order should be affirmed.

Affirmed.