Daisy D. BLANKENSHIP, Appellant,

v.

Maxwell ROWNTREE, Appellee.

No. 4945.

United States Court of Appeals, Tenth Circuit.

Feb. 16, 1955.

J. B. Dudley, Oklahoma City, Okl. (John B. Dudley, Jr., and Dudley, Duvall & Dudley, Oklahoma City, Okl., on the brief), for appellant.

G. F. Rainey, Oklahoma City, Okl. (Rainey, Flynn, Green & Anderson, Okla-

**598**

homa City, Okl., on the brief), for appellee.

Before BRATTON, HUXMAN and MURRAH, Circuit Judges.

BRATTON, Circuit Judge.

Maxwell Rowntree instituted this action against Daisy B. Blankenship, individually and as executrix of the estate of G. T. Blankenship, deceased, to recover for business services rendered pursuant to an alleged contract of employment. The action was dismissed as to the defendant in her capacity as executrix. By answer, the defendant in her individual capacity denied the making of the alleged contract. The jury returned a verdict for plaintiff; judgment was entered upon the verdict; defendant appealed; and for convenience, continued reference will be made to the parties as plaintiff and defendant, respectively.

■ Defendant urges the contention that the trial court fell into reversible error in permitting plaintiff to testify that the value of the property constituting the Blankenship estate was $6,000,-000. The argument is that the evidence could not tend to prove or disprove any justiciable issue in the case; that it was calculated to poison the minds of the jurors in respect to the great wealth of the defendant; that it took the jury far afield from the issues being tried; and that it was prejudicial. In the course of his direct examination, plaintiff testified that during his employment he became familiar with the property of the estate; that the defendant asked him for an estimate of the total value of the estate; and that in response to such request, he gave her an estimate of $6,000,-000. It is the general rule that, except where position or wealth is necessarily involved in determining damages sustained, the admission of evidence concerning the wealth of a party litigant constitutes error. Quinette v. Pullman Co., 10 Cir., 229 F. 333; Union Electric Light & Power Co. v. Snyder Estate Co., 8 Cir., 65 F.2d 297; Laidlaw v. Sage, 158 N.Y. 73, 52 N.E. 679, 44 L.R.A. 216.

The underlying reason for the rule is that such evidence tends to inject into the case a foreign, diverting, and distracting issue which may effectuate prejudicial results.

■ But the general rule to which reference has been made does not have application here. When the testimony in question is carefully examined in its true perspective it becomes apparent that it was admissible for a different purpose than that upon which it is challenged. Plaintiff declared in his complaint upon an express oral contract of employment. He testified that the parties entered into the contract. And he further testified that no one else was present at the time it was entered into. In her answer, the defendant denied that she and the plaintiff ever entered into such an agreement; and in her testimony, she denied categorically that she ever employed plaintiff or agreed to pay him anything for services rendered or to be rendered. As circumstances tending to throw light upon the crucial issue whether he had been employed to render services for the defendant, plaintiff offered letters, memoranda, and other evidence tending to show that over a period of approximately eight months he spent a large part of his time in the office of the defendant, devoted a great deal of effort to the business affairs of the defendant, made numerous trips in connection with her business affairs, and was thoroughly familiar with the business affairs of the estate which she represented as executrix. And as a further circumstance tending to throw light upon the crucial issue whether the parties entered into the oral agreement of employment, plaintiff endeavored to show by the testimony in question that defendant sought his judgment in respect to the value of the estate which she was administering as executrix and that he gave it to her. He did not undertake while on the stand to give his then present opinion in respect to the value of the estate. Instead, he merely testified that the defendant asked him for his estimate of the value of the estate and that he gave it to her at

$6,000,000. The testimony was admissible, not to establish the value of the estate as a substantive fact or issue but to show a circumstance tending to throw light upon the relationship existing between the parties.

The defendant predicates error upon the action of the court in admitting in evidence a certain written memorandum identified in the record as Exhibit 41. It is argued in support of the contention that the document was a confidential communication between the defendant and her attorney and therefore was inadmissible in evidence. For a number of years prior to the death of the husband of the defendant, an attorney in Oklahoma City represented him professionally; and for about six years after the death of her husband, the attorney represented the defendant. During the period in which plaintiff contends that he was employed by the defendant, the defendant discharged the attorney in Oklahoma City and employed an attorney in Fort Worth, Texas, to represent her. She later discharged the attorney in Fort Worth and again employed the attorney in Oklahoma City, and he participated actively in the trial of this case. As introduced in evidence, the memorandum bore a penciled notation in the handwriting of the attorney in Fort Worth that it had been received from the plaintiff; and it bore a notation in the handwriting of the plaintiff reading "Cecil: Mrs. B. ——— makes a record ——— MR." Cecil was the given name of the attorney in Fort Worth. Plaintiff testified that the defendant prepared the memorandum; that its purpose was to supply the attorney further information; that the defendant gave it to plaintiff to be sent to the attorney; that he did send it to the attorney, as directed; that shortly before the trial, plaintiff got from the files of the attorney in Fort Worth a large number of letters, documents, and memoranda including the memorandum in question; and that he did not have the consent of the defendant to obtain them in that manner. The memorandum was long and referred in some detail to several matters relating to the business affairs of the defendant and the estate which she represented as executrix. And it contained certain critical statements concerning the attorney in Oklahoma City. At the time the document was tendered in evidence the attorney for the plaintiff stated that it was offered for the further reason to show that the defendant could not get along with anybody, including her then present counsel whom she had previously discharged, with her attorney in Fort Worth whom she had discharged, as well as plaintiff; and that the document was competent for that purpose if for no other. And in connection with the admission of the document in evidence, the court commented that the notation made thereon by plaintiff indicated that he was in the office of the defendant and must have been doing something there. It may well be—as stated by the attorney—that the memorandum along with other evidence in the case indicated that the defendant discharged her attorney in Oklahoma City, discharged her attorney in Fort Worth, denied her employment of plaintiff, and was unable to get along with anyone. And it may also be—as observed by the court—that the fact that the memorandum was delivered to plaintiff to be sent to the attorney, the fact that he placed the notation thereon, and the fact that he did forward it to the attorney, were circumstances tending to show that he was in the office of the defendant and was doing something there. But the memorandum was a privileged communication between the defendant and her attorney. And with certain exceptions which do not have any present bearing, it has been iterated and reiterated without deviation that confidential communications between attorney and client in the course of professional employment are privileged and cannot be used in evidence against the client. The rule is for the benefit of the client. And it embraces all written and oral communications between attorney and client as well as documents entrusted to the attorney by the client in the course of the

business for which the attorney was employed. *Baldwin v. Commissioner of Internal Revenue*, 9 Cir., 125 F.2d 812; *City & County of San Francisco v. Superior Court*, 37 Cal.2d 227, 231 P.2d 26, 25 A.L.R.2d 1418; *McWilliams v. American Fidelity Co.*, 140 Conn. 572, 102 A.2d 345; *Schmitt v. Emery*, 211 Minn. 547, 2 N.W.2d 413, 139 A.L.R. 1242; *Weinshenk v. Sullivan*, Mo.App., 100 S.W.2d 66.

In an effort to sustain the judgment, plaintiff argues in effect that even though at the outset the memorandum was a communication directly between the defendant and her attorney, the asserted confidential nature of it was waived and totally destroyed when she delivered it to plaintiff. We are unable to share that view. The delivery of the memorandum to plaintiff to be sent to the attorney in Fort Worth did not constitute a waiver or release of its cloak of privilege.

For the error indicated, the judgment is reversed and the cause is remanded.