William E. LEER, Appellant,

v.

CHICAGO, MILWAUKEE, ST. PAUL & PACIFIC RAILWAY COMPANY, Respondent.

No. 50915.

Supreme Court of Minnesota.

July 17, 1981.

Rehearing Denied August 14, 1981.

Yaeger & Yaeger, J. Howard Hill and William G. Jungbauer, Minneapolis, for appellant.

Rider, Bennett, Egan & Arundel, Roger R. Roe, Jr., and Kevin C. Dooley, Minneapolis, for respondent.

Hvass, Weismann & King and Reed K. Mackenzie, Minneapolis, for Minnesota Trial Lawyers Assn.

SCOTT, Justice.

The Dakota County District Court certified the following question to this court as important and doubtful:[1]

Are witness statements obtained by a defendant from non-managerial employees who were working with plaintiff at the time of his accident discoverable by plaintiff under Rule 26.02(3), Minnesota Rules of Civil Procedure, or are the same protected from discovery under a claim of attorney-client privilege?

The appellant, William E. Leer, was employed by respondent railroad as a switchman in its Wausau, Wisconsin, railroad yards. Although the facts are incomplete and in dispute at this stage of the litigation, it appears that on September 20, 1978, appellant was in the process of executing a railroad car switching movement when he sustained an on-the-job injury. As a result, appellant's leg was amputated above the knee.

Appellant alleges in his complaint, based upon the Federal Employers' Liability Act (FELA), that the accident resulted from respondent's negligence, as follows:

[S]uch accident was caused by the defendant's negligence and failure to provide plaintiff with a reasonably safe place to work, failure to exercise reasonable care to provide plaintiff with a reasonably safe and efficient switch mechanism and by further reason of the defendant's negligence and carelessness by reason of its failure to exercise reasonable care in the execution of the switching movement then and there being carried out.

Appellant's action is against the respondent railroad. No members of the switching crew or other employees of the railroad are named as defendants. An investigator-employee of the railroad obtained statements of the other members of the switching crew on the day of the accident. Appellant served a demand for production of these statements upon respondent pursuant to Minn.R.Civ.P. 26.02(3) and 34.02,[2] along with the summons and complaint, on June 22, 1979. In respondent's reply to the request for production of documents, it identified the statements of four of its employees, but refused to produce them on the ground that the statements were protected by the attorney-client privilege.[3] The trial court

---

1. Minn.R.Civ.App.P. 103.03 provides, in relevant part, as follows:

    An appeal may be taken to the Supreme Court:

    *   *   *   *   *   *

    (i) If the trial court certifies that the question presented is important and doubtful, from an order which denies a motion to dismiss for failure to state a claim upon which relief can be granted or from an order which denies a motion for summary judgment.

    This certification did not arise from either of these types of order. Therefore, this action is clearly not appealable as of right per Minn.R. Civ.App.P. 103.03(i). See Price v. Amdal, 256 N.W.2d 461 (Minn.1977), noted in 4 Wm. Mitchell L.Rev. 245 (1978). However, we grant discretionary review pursuant to Minn.R.Civ. App.P. 105.

2. Minn.R.Civ.P. 26.02(3) provides in part:

    Upon request, a person not a party, or a party, may obtain without the required showing a statement concerning the action or its subject matter previously made by that person who is not a party.

    (Emphasis added.)

    Minn.R.Civ.P. 34.02 provides in part:

    The request may, without leave of court, be served upon the plaintiff after commencement of the action and upon any other party with or after service of the summons and complaint upon that party.

3. Minn.Stat. § 595.02(2) (1978) provides in part:

    An attorney cannot, without the consent of his client, be examined as to any communication made by the client to him or his advice given thereon in the course of professional duty * * *.

ruled in favor of respondent, and certified the above question.

The resolution of the certified question therefore depends upon:

(1) Whether the employees whose statements are the subject of this discovery procedure are parties under Minn.R.Civ.P. 26.-02(3); and

(2) Whether, in any event, the attorney-client privilege constitutes a bar to discovery.

1. Appellant argues that since the employees were not named parties their statements are discoverable under Rule 26.02(3). The relevant part of this rule states that "[u]pon request, a person not a party, or a party, may obtain without the required showing a statement concerning the action or its subject matter previously made by *that person who is not a party.*"[4] (Emphasis added.) The Advisory Committee note to Rule 26.02(3) makes clear "that a party, without the necessity of seeking a routine motion, has the right to obtain statements made by non-party witnesses."

Notwithstanding the fact that the employees were not named defendants, respondent argues that they are nonetheless parties since it is their negligence that appellant seeks to impute to respondent and since the employees could be named as parties at any time.

In Minnesota, it has been a longstanding rule of construction that words are to be given their ordinary meaning. *State v. Marsh*, 158 Minn. 111, 196 N.W. 930 (1924). The meaning of the word "party," when used in the legal sense, is clear: "party" means only the named plaintiff or defendant. *See* Black's Law Dictionary 1010 (5th ed. 1979). It would seem self-evident that a statement by an employee who is neither a named plaintiff nor a defendant is a statement of "a person who is not a party," and is therefore discoverable. In *Chappie v. SC (NEI), Inc.*, No. 711856 (Minn. 4th Dist.Ct., May 29, 1975), Judge Stone discussed this issue. He stated that:

An agent or employee who is neither Plaintiff nor Defendant is a person not a party to the lawsuit and his statement may be obtained under Rule 26.02 without a specific showing of substantial need.

Judge Stone's view is especially instructive, since he served as a member of the 1975 Advisory Committee that recommended this rule change, which deviated from the federal rule.

It should also be noted that section IV of the Minnesota Rules of Civil Procedure for the District Courts, entitled "Parties," provides meaningful guidance as to whether the corporate employees in this case should be considered parties. For example, Minn. R.Civ.P. 19.01 provides in part that "[a] *person* who is subject to service of process shall be joined as a *party* * * *.*" (Emphasis added.) Furthermore, Rule 19.02 is applicable when "[a] *person* * * * cannot be made a *party.*" (Emphasis added.) These provisions make it clear that a "person" becomes a "party" when named in the action.

We will continue to follow the construction suggested by our prior cases, as more recently enunciated in *Larson v. Independent School District No. 315*, 305 Minn. 358, 362, 233 N.W.2d 744, 747 (1975):

[T]he Rules are to be liberally construed so as to serve the interests of justice and so as to discourage reliance on technicalities and form.

▪ For the above reasons, we conclude that in the factual setting presented here corporate employees who are not named parties in the litigation are not "parties" within the meaning of Minn.R.Civ.P. 26.-02(3).

2. In *Schmitt v. Emery*, 211 Minn. 547, 2 N.W.2d 413 (1942), this court held that employee statements taken by an employer's claims agent were protected by the attorney-client privilege. Soon after Minnesota

---

4. The Minnesota rule differs from Rule 26(b)(3) of the Federal Rules of Civil Procedure with respect to witnesses' statements by providing for free discovery of any statements made by persons who are not parties to the litigation.

decided *Schmitt v. Emery*, the United States Supreme Court decided *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). *Hickman* involved an accident in which a tugboat sank while towing a ferry. An attorney hired by the tugboat owner (a partnership) took the statements of the tugboat crew, who witnessed the accident. In an action against the company on behalf of an employee who drowned, the tugboat owners claimed the statements were protected by the attorney-client privilege and thereby refused to produce them. The court found that they were not privileged, stating:

> [T]he memoranda, statements and mental impressions in issue in this case fall outside the scope of the attorney-client privilege and hence are not protected from discovery on that basis.[5]

*Id.* at 508, 67 S.Ct. at 392.

*Hickman*, having been decided under the federal rule, is not controlling, but was significant in its impact upon the adoption of the Minnesota Rules of Civil Procedure in 1952. Two works on Minnesota civil practice have concluded that Rule 26.02(3) embodies the *Hickman* decision.[6] Both the case at hand and *Hickman* portray the investigative scenario of an overwhelming percentage of personal injury litigation.

Since *Hickman*, several cases have considered the attorney-client privilege in the employer/employee setting. One of these cases is *Philadelphia v. Westinghouse Electric Corp.*, 210 F.Supp. 483 (D.C.Pa.1962). The *Westinghouse* court narrowed the issue to a determination of whether the employee was, at the time, seeking legal advice on behalf of the corporation. If not, employee statements are merely those of witnesses, and are not privileged. To determine whether the employee was seeking legal advice on behalf of the corporation, the court advanced the "control group" test.

This test requires that the employee be in a position to control or take a substantial part in a decision about any action to be taken upon the advice of the attorney or that the employee be a member of a group having such authority. In the instant case, it is clear that the switching crew members are not within the "control group."

A second test, "the subject matter test," was advanced in *Harper & Row Publishers, Inc. v. Decker*, 423 F.2d 487 (7th Cir. 1970), *aff'd per curiam by an equally divided court*, 400 U.S. 348, 91 S.Ct. 479, 27 L.Ed.2d 433 (1971). In this case, plaintiff sought to discover statements prepared by defense attorneys while debriefing employees (or former employees) after they testified before a federal grand jury. The court held that an employee, though not a member of his employer's control group, could be sufficiently identified with his employer so that his communication to the corporation's attorney would be privileged. Such a connection exists where the employee made the communication at the direction of his supervisor and where the subject matter upon which the lawyer's advice was sought by the corporation and dealt with in the communication was within the performance of the employee's duties. The court stated that it was—

> not dealing in this case with the communications of employees about matters as to which they are virtually indistinguishable from bystander witnesses; employees who, almost fortuitously, observe events which may generate liability on the part of the corporation. We express no opinion with respect to communications by employees who fall in that class.

*Id.* at 491.

Because the *"subject matter"* and the *"control group"* tests have been widely criticized,[7] a third test, the *"Weinstein*

---

5. We need not discuss the work-product rule of the *Hickman* case, since the Minnesota rule differs from the federal rule.

6. *See* 11 P. Thompson, *Evidence* § 501.01 at 188 (1979) ("The *Hickman* decision is largely codified in Minn.R.Civ.P. 26.02.") 3 D. McFar-

land & W. Keppel, *Minnesota Civil Practice*, § 1506, at 19 (1979).

7. The "control group" test is criticized as ignoring the realities of corporate life by applying the attorney-client privilege to statements of only the highest level of executives. *See* Note, *Privileged Communications Inroads on the*

*test* " was adopted by the Eighth Circuit in *Diversified Industries v. Meredith, Inc.*, 572 F.2d 596 (1978). The court adopted the suggestion of Judge/Professor Weinstein that the attorney-client privilege should be available to a corporation if all the following requirements are satisfied:

> (1) [T]he communication was made for the purpose of securing legal advice; (2) the employee making the communication did so at the direction of his corporate superior; (3) the superior made the request so that the corporation could secure legal advice; (4) the subject matter of the communication is within the scope of the employee's corporate duties; and (5) the communication is not disseminated beyond those persons who, because of the corporate structure, need to know its contents.

*Id.* at 609.

In deciding this case, certain conflicting policy considerations must be kept in mind. The purpose behind the attorney-client privilege is to promote open and honest discussion between clients and their attorneys. *National Texture Corp. v. Hymes*, 282 N.W.2d 890 (Minn.1979). On the other hand, Minnesota favors a liberal construction of the discovery rules so as to uncover all relevant matters before trial, even those inadmissible at trial. *Anderson v. Florence*, 288 Minn. 351, 362, 181 N.W.2d 873, 879 (1970). As recognized in *Kahl v. Minnesota Wood Specialty, Inc.*, 277 N.W.2d 395 (Minn. 1977), the attorney-client privilege is a bar-

rier to disclosure and tends to suppress relevant facts and, as such, must be strictly construed.

▬▬ After reflecting on these policy factors and considering the three alternative tests, we reverse the trial court. Under any of these tests, the scope of the attorney-client privilege does not encompass communications about events which are within the employee's knowledge solely because he witnessed an accident.

We therefore hold that when an employee is merely a witness to an accident and not a party to a subsequent action, communications made with him in a general investigation do not create an attorney-client relationship. This result is consistent with *Hickman, supra*, and the three tests cited herein.[8] In so holding, we necessarily overrule *Schmitt v. Emery, supra.*

Reversed.

SIMONETT, Justice (concurring specially).

The majority holds that, under Rule 26, "in the factual setting presented here," statements of corporate employees who are not named parties are freely discoverable on request. I concur in this result, and I join in part 2 of the court's opinion.

But it seems to me a different result may obtain under Rule 26 if the employee is, say, an owner of a small, closely held business or professional corporation or partnership, and the employee is not just a witness but a

---

*"Control Group" Test in the Corporate Area*, 22 Syracuse L.Rev. 759, 767 (1971). On the other hand, the subject matter test is criticized as broadly protecting almost all employee communications. *See* Note, *Attorney-Client Privilege in Corporate Clients; The Control Group Test*, 84 Harv.L.Rev. 424, 432 (1970).

**8.** Recently, in *Upjohn Co. v. United States*, ── U.S. ──, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981), the United States Supreme Court considered the scope of the attorney-client privilege in a corporate setting. In *Upjohn*, that corporation, through its general counsel, made an investigation of alleged illegal payments to foreign officials. As part of the investigation, Upjohn's general counsel interviewed and sent questionnaires to foreign managers. Through an administrative summons, the criminal investiga-

tion division of the Internal Revenue Service sought production of the completed questionnaires and the interview notes. Upjohn refused to produce them, arguing that the documents were both work product and protected by the attorney-client privilege.

After criticizing the "control group" test, yet without adopting the "subject matter" or any other test, the Supreme Court held that the documents in question were protected by the attorney-client privilege.

*Upjohn* is critically different from the instant case in that the communications in *Upjohn* regarded a matter within the scope of the employees' duties. In the instant case the witnessing of an accident was not within the scope of the employees' duties.

participant in conduct for which his corporation or partnership is vicariously liable. Rule 26 says a party is not entitled to another party's statement on request, but only after a required showing. To require such employee's statement to be surrendered on request if only his corporation is sued but not if he himself is sued would seem to give undue deference to the corporate veil.

PETERSON, Justice (concurring specially).

I join in the opinion of Justice Simonett.

OTIS, Justice (dissenting).

With respect to statements taken from those members of the switching crew whose negligence is alleged to have caused plaintiff's injuries, I cannot agree that their employer has no right to invoke the attorney-client privilege. As to them, the unanimous decision of the United States Supreme Court in *Upjohn Co. v. United States*, —— U.S. ——, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) is clearly pertinent, and in my opinion, highly persuasive.

In *Upjohn*, the corporation found itself faced with the likelihood of a substantial tax liability arising out of the bribery of foreign officials by its employees abroad. This disclosure prompted the Chairman of the Upjohn Board of Directors to authorize the corporation's general counsel to make a thorough investigation. An essential, indeed critical, element of the inquiry was to elicit from the employees responsible for the alleged misconduct, information regarding their participation in the illegal payments.

Questionnaires went to all foreign managers and responses were sent directly to general counsel. The Internal Revenue Service subpoenaed all Upjohn files relative to the investigaiton. Upjohn resisted on the grounds of the attorney-client privilege. The Supreme Court sustained that contention. The Court noted that:

Middle-level—and indeed lower-level—employees can, by actions within the scope of their employment, embroil the corporation in serious legal difficulties, and it is only natural that these employees would have the relevant information needed by corporate counsel if he is adequately to advise the client with respect to such actual or potential difficulties.

\* \* \* \* \* \*

The communications at issue were made by Upjohn employees to counsel for Upjohn acting as such, at the direction of corporate superiors in order to secure legal advice from counsel. As the magistrate found, "Mr. Thomas [general counsel] consulted with the Chairman of the Board and outside counsel and thereafter conducted a factual investigation to determine the nature and extent of the questionable payments *and to be in a position to give legal advice to the company with respect to the payments.*"

\* \* \* \* \* \*

The communications concerned matters within the scope of the employees' corporate duties, and the employees themselves were sufficiently aware that they were being questioned in order that the corporation could obtain legal advice.

*Id.* 101 S.Ct. at 683, 685 (emphasis in original) (footnote omitted).

In the case before us, this was precisely the purpose of counsel's interviewing those whose activity may have given rise to the railroad's liability, i. e. to defend the company in anticipation of potential litigation. The Supreme Court went on to point out that:

The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney: "The protection of the privilege extends only to *communications* and not to facts. A *fact* is one thing and a communication concerning that fact is an entirely different thing. The client cannot be compelled to answer, the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney."

\* \* \* \* \* \*

Here the Government was free to question the employees who communicated with Thomas and outside counsel. Upjohn has provided the IRS with a list of such employees, and the IRS has already interviewed some 25 of them.

*Id.* at 685–86 (quoting *City of Philadelphia v. Westinghouse Electric Corp.*, 205 F.Supp. 830, 831 (E.D.Pa.1962) (emphasis in original) (citations omitted).

The Chief Justice, expanding on the decision of the Court, would explicitly adopt this rule:

[A] communication is privileged at least when, as here, an employee or former employee speaks at the direction of the management with an attorney regarding conduct or proposed conduct within the scope of employment. The attorney must be one authorized by the management to inquire into the subject and must be seeking information to assist counsel in performing any of the following functions: (a) evaluating whether the employee's conduct has bound or would bind the corporation; (b) assessing the legal consequences, if any, of that conduct; or (c) formulating appropriate legal responses to actions that have been or may be taken by others with regard to that conduct.

*Id.* at 680 (Burger, J., concurring).

I have difficulty distinguishing the principles set forth in *Upjohn* from those we have applied for almost 40 years since *Schmitt v. Emery*, 211 Minn. 547, 552, 2 N.W.2d at 413, 416 (1942). There we held:

Because it is so often necessary for clients to communicate with their attorneys with the assistance or through the agency of others, as well as by their own personal action, the privilege extends to a communication prepared by an agent or employe, whether it is transmitted directly to the attorney by the client or his agent or employe. Of course the privilege is limited to the necessities of the situation. Where a document is prepared by an agent or employe by direction of the employer for the purpose of obtaining the advice of the attorney or for use in prospective or pending litigation, such document is in effect a communication between attorney and client. The client is entitled to the same privilege with respect to such a communication as one prepared by himself.

Consequently, I would adhere to precedent and affirm the trial court by answering the certified question in the affirmative insofar as employees who took part in the switching operation are concerned. I would agree that the role of employees not responsible for the activity out of which the injury occurred are bystanders whose status would be quite different from the employees with which the *Upjohn* decision was dealing.