**CONNECTICUT MUT. LIFE INS. CO.**
v.
**SHIELDS et al.**

**HOME LIFE INS. CO.**
v.
**SHIELDS et al.**

**EASTERN LIFE INS. CO. OF NEW YORK**
v.
**SHIELDS et al.**

United States District Court
S. D. New York.
July 13, 1954.

6

Davis, Polk, Wardwell, Sunderland & Kienall, New York City, for Connecticut Mutual Life Ins. Co., Home Life Ins. Co. and Eastern Life Ins. Co. of New York.

Cahill, Gordon, Reindel & Ohl, New York City, for defendant Shields & Co.

Begley, Diamond & Begley, Schenectady, N. Y., for defendants Parsons, Brinckerhoff, Hall & MacDonald.

Walters & Donovan, New York City, for defendants Robert E. Schweser Co. and Leonard L. Laurence.

EDELSTEIN, District Judge.

The defendant Shields & Company has moved for the production of certain documents under Rule 34, Federal Rules of Civil Procedure, 28 U.S.C.A., and under Rule 37(a), to compel answers to certain questions propounded to a witness upon his deposition. The discovery proceedings occur in connection with three unconsolidated actions by investors to rescind their purchases, in November of 1950, of an amount of revenue bonds pertaining to a bridge in Nebraska, on the ground of material misrepresentation. In June of 1953 the plaintiff Connecticut Mutual Life Insurance Company turned its file over to one of the attorneys in its legal department for investigation, with the statement that the problem was one of a legal nature. The attorney, Mr. Hook, made two separate trips to the bridge area, and rendered reports of his investigations and conclusions. He also made an intermediate report to the Committee on Valuation of Securities, in the form of a revision of his first report. There are also in existence correspondence and memoranda referring to communications had between Hook and others than his employer, relating to his trips. These reports and documents are the subject of the motion to produce, as is a memorandum prepared by the financial secretary of Connecticut Mutual for the president of that company. The questions for which answers are sought relate to a discussion of Hook's reports in which he took part, and apparently call for the substance of the reports.

 Production of the reports and of the peripheral correspondence and memoranda is resisted on the ground that they constitute the work product of an attorney, within the rule of Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451, and that there has been no showing of good cause, either under that doctrine or under Rule 34. The defendant denies that the work product of an attorney is involved because the reports were not prepared by trial counsel for or in anticipation of litigation. It appears that the case was not referred to trial counsel until October of 1953, while Hook's investigative trips were made in July and September of that year. But Hook's understanding of his purpose was to make a complete study of the situation to find out what Connecticut Mutual's legal rights might be. He acted not as a mere investigator, but exercised the legal talent and training of an attorney in developing his reports. Scourtes v. Fred W. Albrecht Grocery Co., D.C., 15 F.R.D. 55. Though he was not functioning as an autonomous lawyer, nevertheless he was in a basic professional relationship with his employer requiring the training, skill and knowledge of a lawyer and the essential integrity implicit in the lawyer-client relationship. Compare Bifferato v. States Marine Corp. of Delaware, D.C., 11 F.R.D. 44. Within a month after his work was completed, trial counsel was retained, and within a few more months suit was instituted. Hook's activities may readily be characterized as having been carried on "with an eye toward litigation * * *", Hickman v. Taylor, supra, 329 U.S. at page 511, 67 S.Ct. at page 394, and the fruits of his labor as the " 'work product of the lawyer' ".

 But defendant contends that even though his reports are work product, the fact that they have been displayed to third persons constitutes a waiver of any privilege which attaches, on the ground that the same facts which constitute a waiver of the attorney-client privilege also effect a waiver of any "work product immunity". Since the reports and surrounding correspond-

ence and memoranda clearly fall outside the scope of the attorney-client privilege, Hickman v. Taylor, 329 U.S. at page 508, 67 S.Ct. 385, and I do not understand defendant to urge to the contrary, this argument seems to be that the work product rule and the attorney-client privilege are bottomed on the same considerations and the protection each affords is subject to the same infirmity. Any such confusion was dispelled by Hickman v. Taylor, which determined the right to discovery of the work product of an attorney apart from considerations of attorney-client privilege. The protection afforded by the work product rule is based upon a policy of assuring a lawyer the opportunity to work "with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." Hickman v. Taylor, supra, 329 U.S. at page 510, 67 S.Ct. at page 393. Even if an attorney-client privilege existed, its waiver would be irrelevant to the guiding considerations affording a lawyer a measure of protection against the intrusion of an adversary into his files.

The work product rule does not, however, render a lawyer's files inviolate. Where the production of relevant and non-privileged facts in an attorney's file is "essential to the preparation of one's case, discovery may properly be had." Hickman v. Taylor, supra, 329 U.S. at page 511, 67 S.Ct. at page 394. A stringent standard of good cause is applied, commensurate with the significance of the policy against the invasion of an attorney's freedom in the preparation of his case. It has been said that "[t]he party asking for disclosure is bound to show that the situation is a rare one having exceptional features which make the disclosure necessary in the interests of justice * * *."

Moore's Federal Practice, 2nd Ed., Vol. 4, p. 1131. The good cause asserted is related, principally, to the affirmative defenses of waiver and estoppel, on the ground that the plaintiffs have long been independently informed of the actual state of facts and failed to assert any claim; and the documents bear directly upon the question of when and to what extent plaintiffs secured independent knowledge of the facts relating to the bridge, the revenue bonds of which they claim they bought as a result of defendant's misrepresentations. I am of the opinion that this showing of good cause is not only insufficient to warrant a discovery of the work product of an attorney, but it is insufficient under Rule 34 without consideration of the work product rule. And I quite agree with plaintiffs that the crucial facts bearing upon the defenses of waiver and estoppel are, not the details of Hook's investigations and reports, but the dates of the reports, which are on record, and of the commencement of suit. Nor is good cause made out on the issue of the value of the bond, because it appears that information relevant to that issue may be, and indeed has been, obtained elsewhere.

Accordingly, the motion to compel production of the reports and peripheral memoranda and correspondence will be denied. Likewise, the motion to compel the answers to questions of Hook's deposition, calling for similar material, in non-documentary form will be denied. If an attorney need not produce his files, he ought not to be compelled to give oral testimony involving their contents. For the report of the financial secretary to the president of Connecticut Mutual, there has not even been an attempt to show good cause, assuming the relevancy of the report, and its production will also be denied.