**VILASTOR-KENT THEATRE CORP., and Bur-Don Theatre Enterprises, Inc., Plaintiffs,**

v.

**Harry BRANDT et al., Defendants.**

United States District Court
S. D. New York.

June 6, 1956.

See also 18 F.R.D. 199.

Milbank, Tweed, Hope & Hadley, New York City (A. Donald MacKinnon, Janet P. Kane, New York City, of counsel), for plaintiffs.

Louis Phillips, New York City (John F. Caskey, Stanley Godofsky, New York City, of counsel), for defendant Paramount Film Distributing Corp.

LEIBELL, District Judge.

This action was commenced on December 14, 1953, to recover treble damages alleged to have been sustained in the operation of the Kent and Terrace Theatres in Yonkers, New York, as a result of alleged violations of the anti-trust laws. The case was referred to me to conduct a pretrial, after all depositions had been completed, and to hear any motions that might be made meanwhile.

Plaintiff has moved by oral motion under Rule 34, 28 U.S.C.A., for an order directing the defendant to produce a memorandum dated July 6, 1951, prepared by Mr. Sam Boverman, then an

attorney in Paramount's Legal Department, at the request of its then Assistant General Counsel, Mr. Louis Phillips. Its existence became known during the taking of the deposition of defendant, Paramount Pictures Corporation, by its now general counsel, Mr. Phillips.

The circumstances surrounding the preparation of this memorandum were: that on or before June 25, 1951, a Mr. Wright, an attorney retained by the Kent Theatre, which was located in Yonkers, N. Y., informed Mr. Phillips that the Kent Theatre was unjustly subjected to an improper clearance running in favor of the Wakefield Theatre, which was located in the Bronx; that on June 28, 1951, Mr. Phillips by letter replied that the clearance as set up was proper in view of the fact that the Kent and Wakefield Theatres were in direct competition; that Mr. Wright by letter dated July 5, 1951, expressed again his disagreement as to the propriety of the clearance, and suggested, as an amicable experiment under the priority he claimed, that the Kent Theatre be permitted to play on a run clear of the Wakefield Theatre. Mr. Wright's letter of July 5, 1951, contained the following significant sentence:

"If Paramount is willing to make this experiment, I should be glad to advise my clients to withhold the legal action they now contemplate until there has been an opportunity to assess the results."

On July 17, 1951, Mr. Phillips wrote Mr. Weisman, counsel for Harry Brandt, owner of the Wakefield Theatre, enclosing a copy of Mr. Phillips' letter of June 28, 1951, to Mr. Wright, and Mr. Wright's original reply letter of July 5, 1951. Mr. Phillips also enclosed a copy of the memorandum prepared by Sam Boverman. The pertinent parts of Mr. Phillips' letter of July 17th read as follows:

"* * *, I am submitting the above described letters to you so that you can discuss them with Harry Brandt whose company operates the Wakefield Theatre which is granted clearance by us over the Kent Theatre.

"Since this clearance of the Wakefield Theatre over the Kent Theatre is involved, I would like you to get Harry Brandt's views on the subject of the clearance and whether or not he is insisting on that clearance even though it might result in a lawsuit to us and to him."

The correspondence sent to Mr. Weisman does not indicate that the Boverman memorandum was to be shown to Mr. Brandt, but rather that the subject matter contained in the enclosed letters was to be discussed by Mr. Weisman with Brandt in order to obtain his view concerning that subject matter.

Further correspondence ensued between all the interested parties, but it is of no importance in the consideration of the present motion.

It appears from a reading of the correspondence that the compelling force behind the letter of July 17, 1951, from Mr. Phillips to Mr. Weisman was an earnest desire on the part of the former to avoid, if possible, a threatened suit that would involve both their clients as co-defendants. The letter to Mr. Weisman was neither a routine matter nor a normal business procedure on the part of Paramount Pictures. It concerned a situation that might result in litigation against their clients by Mr. Wright's client. The memorandum was prepared by Mr. Boverman because of this likelihood and his activities may properly be characterized as having been carried on "with an eye toward litigation". Hickman v. Taylor, 329 U.S. 495, at page 511, 67 S.Ct. 385, at page 394, 91 L.Ed. 451; Connecticut Mutual Life Insurance Co. v. Shields, D.C.S.D.N.Y.1954, 16 F.R.D. 5, at page 7.

It was held by Judge Leahy in Tobacco and Allied Stocks, Inc., v. Transamerica Corporation, D.C.Del.1954, 16 F.R.D. 534, 536, that in effect, the term "not priv-

ileged" as used in Rule 34, incorporates all documents not within either the "attorney-client privilege" or protected under the "work-product" theory. In that case he concluded that certain correspondence was neither privileged nor protected from disclosure.

It is plaintiff's contention that the Boverman memorandum lost whatever protection it had as an attorney's work-product or as an attorney-client privileged communication, at the time it was sent by Mr. Phillips to Mr. Weisman, as attorney for defendant Brandt. Defendants contend that if an attorney discloses confidential information to counsel for a potential co-party in anticipation of prospective litigation or submits to him any of his attorney work-product, then any such communication would remain privileged, even though such disclosure took place prior to the actual institution of the lawsuit.

■ Although the memorandum in question has not been offered for examination by the Court, I am satisfied from the facts disclosed by the correspondence and the extracts from the deposition of Mr. Phillips that it comes within the "work-product immunity". It therefore becomes immaterial for purposes of this motion to ascertain whether the memorandum also contains matters clearly within the attorney-client privilege, for a waiver of that privilege does not affect the protection against the disclosure of the work-product of an attorney.

That this memorandum comes within the "work-product" immunity seems to be clear from the following quotation from Hickman v. Taylor, supra. Concerning the attorney-client privilege the Court stated, 329 U.S. at page 508, 67 S.Ct. at page 392:

> "We also agree that the memoranda, statements and mental impressions in issue in this case fall outside the scope of the attorney-client privilege and hence are not protected from discovery on that basis. It is unnecessary here to de-lineate the content and scope of that privilege as recognized in the federal courts. For present purposes, it suffices to note that the protective cloak of this privilege does not extend to information which an attorney secures from a witness while acting for his client in anticipation of litigation. Nor does this privilege concern the memoranda, briefs, communications and other writings prepared by counsel for his own use in prosecuting his client's case; and it is equally unrelated to writings which reflect an attorney's mental impressions, conclusions, opinions or legal theories."

Concerning the work-product of an attorney the court stated, 329 U.S. at page 509, 67 S.Ct. at page 392:

> "We are thus dealing with an attempt to secure the production of written statements and mental impressions contained in the files and the mind of the attorney Fortenbaugh without any showing of necessity or any indication or claim that denial of such production would unduly prejudice the preparation of petitioner's case or cause him any hardship or injustice. For aught that appears, the essence of what petitioner seeks either has been revealed to him already through the interrogatories or is readily available to him direct from the witnesses for the asking.

> \*  \*  \*  \*  \*

> "In our opinion, neither Rule 26 nor any other rule dealing with discovery contemplates production under such circumstances. That is not because the subject matter is privileged or irrelevant, as those concepts are used in these rules. Here is simply an attempt, without purported necessity or justification, to secure written statements, private memoranda and personal recollections prepared or formed by an adverse party's counsel in the course

of his legal duties. As such, it falls outside the arena of discovery and contravenes the public policy underlying the orderly prosecution and defense of legal claims. Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney."

And 329 U.S. at pages 511 and 512, 67 S.Ct. at page 394:

"We do not mean to say that all written materials obtained or prepared by an adversary's counsel with an eye toward litigation are necessarily free from discovery in all cases. Where relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had. * * * But the general policy against invading the privacy of an attorney's course of preparation is so well recognized and so essential to an orderly working of our system of legal procedure that a burden rests on the one who would invade that privacy to establish adequate reasons to justify production through a subpoena or court order."

■ Under the Hickman decision the inquiring party has the burden of showing that the memorandum relates to facts essential to the preparation of his client's case and he must sustain that burden by adequate reasons to justify the production of that document. Otherwise, the court will not order counsel for the adverse party to produce a document coming within the "work-product" classification.

Here the plaintiff has not shown sufficient good cause in its request for such a production. Plaintiff relies mainly on the fact that since a copy of the memorandum was transmitted to Mr. Weisman, the memorandum lost the protection which attaches to the work-product of an attorney. In the case of Connecticut Mutual Life Insurance v. Shields, D.C.S.D.N.Y.1954, 16 F.R.D. 5, 7, that same contention was made. Judge Edelstein disposed of the argument as follows:

"Since the reports and surrounding correspondence and memoranda clearly fall outside the scope of the attorney-client privilege, Hickman v. Taylor, 329 U.S. at page 508, 67 S. Ct. 385, and I do not understand defendant to urge to the contrary, this argument seems to be that the work product rule and the attorney-client privilege are bottomed on the same considerations and the protection each affords is subject to the same infirmity. Any such confusion was dispelled by Hickman v. Taylor, which determined the right to discovery of the work product of an attorney apart from considerations of attorney-client privilege. The protection afforded by the work product rule is based upon a policy of assuring a lawyer the opportunity to work 'with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel.' Hickman v. Taylor, supra, 329 U.S. at page 510, 67 S.Ct. at page 393. Even if an attorney-client privilege existed, its waiver would be irrelevant to the guiding considerations affording a lawyer a measure of protection against the intrusion of an adversary into his files."

■ As shown above, a stringent standard of good cause is applied, commensurate with the significance of the policy against the invasion of an attorney's freedom in the preparation of his case. It has been said that "[t]he party asking for disclosure is bound to show that the situation is a rare one having exceptional features which make the disclosure necessary in the interests of justice * * *." Moore's Federal Prac-

tice, 2d Ed., Vol. 4, p. 1131, cited in Connecticut Mutual Life Insurance Co. v. Shields, supra. This the plaintiff has failed to do. The motion is accordingly denied.