**TRANSMIRRA PRODUCTS CORP.,**
Plaintiff,

v.

**MONSANTO CHEMICAL COMPANY,**
Defendant.

United States District Court
S. D. New York.
Dec. 19, 1960.

See also 186 F.Supp. 270.

Aronstein & Aronstein, New York City, for plaintiff. William B. Aronstein, New York City, of counsel.

Shearman, Sterling & Wright, New York City, for defendant. J. Robert Lunney, New York City, of counsel.

LEVET, District Judge.

Plaintiff has moved for reargument of a determination regarding defendant's objections to certain interrogatories propounded by plaintiff. The motion to reargue was granted.

The interrogatories now in question on reargument are Nos. 10, 22 and 28. These interrogatories, together with the objections of the defendant thereto, are as follows:

*Interrogatory 10:*

"Please state the substance in full of all the conversations and other communications by defendant's attorneys with Hale, Kay & Grant and John Hoxie, giving the dates and places thereof; if any writings thereon were made, exchanged or passed between them, please identify same."

*Defendant's objection to Interrogatory 10:*

"This interrogatory is not restricted in time or as to subject matter. Moreover it asks for privileged matter. Plaintiff should not be permitted to inquire as to conversations or communications between various law firms in the absence of a clear showing of relevance and the showing of a compelling necessity."

*Interrogatory 22:*

"Please state if defendant or any of its servants, agents, officers, employees or attorneys or anyone else on its behalf aided Sylvania Electric Products, Inc., its attorneys, agents, servants, employees or officers, in any way, shape, form or manner whatsoever in the preparation or defense by Sylvania Electric Products, Inc., of the aforementioned infringement action by plaintiff against Sylvania Electric Products Inc.; if so, please state in detail the aid given."

*Defendant's objection to Interrogatory 22:*

"To the extent that this interrogatory asks for the communications between attorneys it is objectionable upon the grounds previously stated."

*Interrogatory 28:*

"Please state whether defendant, its agents, servants, employees, officers or attorneys, or anyone on their behalf conferred with, aided, assisted or cooperated with Sylvania Electric Products, Inc., its agents, servants, employees, officers or attorneys, or anyone on their behalf in the preparation and making or bringing on or plan to make or bring on a motion or other proceeding by Sylvania Electric Products, Inc., to procure or attempt to procure a stay or staying or enjoining plaintiff from proceeding against Sylvania Electric Products, Inc., in the action commenced by plaintiff against it for infringement of Letters Patent No: 2,820,918; if so, please

give the details of such conduct with the dates same took place and the places and persons taking part therein."

*Defendant's objection to Interrogatory 28:*

"To the extent that this interrogatory asks for communications between attorneys it is objectionable upon the grounds previously stated."

The instant suit, filed by plaintiff on June 20, 1960, alleges two causes of action:

The first cause of action alleges infringement of plaintiff's patent (No. 2,-820,918) by defendant; that the defendant and certain trade organizations combined to infringe upon plaintiff's patent and to extend a monopoly of the use of certain materials in competition with plaintiff's patent material, and to defend actions of infringement brought by plaintiff; that defendant agreed to defend, directly or indirectly, any suit for infringement against defendant's customers; that defendant and others jointly cooperated in defense of plaintiff's actions.

The second cause of action alleges appropriation of plaintiff's ideas, invention, etc., unjust enrichment, unfair competition, etc.

Rule 33 of the Federal Rules of Civil Procedure, 28 U.S.C.A., provides that interrogatories may relate to any matters which can be inquired into under Rule 26(b). In turn, Rule 26(b) is as follows:

"Scope of Examination. Unless otherwise ordered by the court as provided by Rule 30(b) or (d), the deponent may be examined regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the examining party or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents or other tangible things and the identity and location of persons having knowledge of relevant facts. It is not ground for objection that the testimony will be inadmissible at the trial if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence."

Rule 33 also provides: "The provisions of Rule 30(b) are applicable for the protection of the party from whom answers to interrogatories are sought under this rule."

In Rediker v. Warfield, D.C.S.D.N.Y. 1951, 11 F.R.D. 125, 128, Judge Weinfeld stated:

" * * * 'relevant' as used in the Federal Rules of Civil Procedure, 28 U.S.C.A., is not to be equated with 'relevant' as ordinarily used in determining admissibility of evidence upon a trial. It is relevancy to the subject matter which is the test. The question of admission into evidence is for the Trial Court. Rule 26(b), Rule 33; Gutowitz v. Pennsylvania R. Co., D.C., 7 F.R.D. 144; Kaiser-Frazer Corporation v. Otis & Co., D.C.S.D., 11 F.R.D. 50."

The test is, therefore, relevancy as to the subject matter of the action and not as to the precise issues framed by the pleadings. 4 Moore, Federal Practice, ¶ 33.15, at 2296 (2d ed. 1950). Yet, as Judge Edelstein of this court has observed: "[I]t is indispensable to a ruling on the propriety of interrogatories that the court adopt some basis for the determination of relevancy * * *." T. C. Theatre Corp. v. Warner Bros. Pictures, Inc., D.C.S.D.N.Y.1954, 16 F.R.D. 173, 175.

While Rule 33 should be accorded a liberal interpretation, "still the trial court is vested with reasonable discretion in determining whether a party is entitled to have interrogatories answered, and the action of the court in respect

thereto will not be disturbed except in case of abuse of the discretion." Newell v. Phillips Petroleum Co., 10 Cir., 1944, 144 F.2d 338, 340.

██ Accordingly, the objection to Interrogatory 10 is sustained. It is too broad. It does not appear who "Hale, Kay & Grant" are, or who "John Hoxie" is. No indication is given as to the time, nature or subject of the conversation. Nor does the interrogatory appear to be relevant in the sense used in the Rules. However, this disposition is without prejudice to the plaintiff's right to move for leave to interpose a newly-framed interrogatory, upon proof of its relevancy and upon a showing that the information sought is not privileged, and with respect to which defendant may interpose any suitable objection.

Interrogatories 22 and 28 refer to a prior infringement action brought by plaintiff against Sylvania Electric Products, Inc., and seek information concerning defendant Monsanto's connection with the defense of that suit.

Defendant objects that these interrogatories inquire as to privileged communications between attorneys. Plaintiff's attorney repeatedly asserts that defendant's counsel, at the oral argument held on or about September 13, 1960, conceded that the information desired was non-privileged. This, however, is specifically denied by defendant's counsel.

Plaintiff's action against Sylvania is listed as Docket No. 60 Civ. 842 in this court. Since this case was referred to by both parties in the motion papers, I have examined the court file. The complaint by Transmirra against Sylvania was filed February 29, 1960, alleging infringement by Sylvania of plaintiff's alleged patent No. 2,820,918, issued January 21, 1958, to Robert Aronstein. Sylvania was apparently being supplied by Monsanto, Koppers Company, Inc., Majestic Molded Products Corp., and Dow Chemical Co. It seems that plaintiff has instituted other actions in this court for alleged infringement of the same patent. The action against Sylvania, however, was discontinued by stipulation of the parties thereto, dated May 12, 1960, and filed May 20, 1960.

Defendant has referred to the case of Titcomb v. Norton Co., D.C.D.Conn.1959, 124 U.S.P.Q. 257, to sustain its contention that consultation within the industry is not relevant to the charge of an illegal conspiracy because it is not actionable. Defendant overlooks the fact that in this case District Judge Smith, now a member of the Court of Appeals of this circuit, was deciding an action *after* trial and found that no concerted action or agreement to violate plaintiff's confidence had been established. Judge Smith stated in part:

"Plaintiff seeks also in his briefs to raise a claim of conspiracy by defendant with members of the industry to damage plaintiff. The exact basis of an illegal agreement claimed to have been proved is not clear. No concerted action or agreement to violate plaintiff's confidence has been established. The most that is shown is consultation in the industry as to the action taken with regard to taking licenses or resisting patent claims. This in itself is not actionable." 124 U.S.P.Q. at 265–266.

Plaintiff asserts, however, that Interrogatories 22 and 28 are relevant since the communications sought are part of the overt acts in the conspiracy alleged and will be part of the proof offered against defendant Monsanto. In view of the liberality with which the relevancy aspect of interrogatories has been generally regarded, the questions posed in Interrogatories 22 and 28 may well be relevant for the purpose stated.

Whether these interrogatories involve privileged matter, however, remains the crucial issue. Defendant's objection to them is apparently predicated on those grounds delineated in defendant's objection to Interrogatory 10: "Plaintiff

should not be permitted to inquire as to conversations or communications between various law firms in the absence of a clear showing of relevance and the showing of a compelling necessity." This language would indicate that defendant seeks to invoke the attorney's "work product" privilege which would thus render the information sought by plaintiff immune to disclosure, save for compelling reasons. The arguments proffered in the affidavit of defendant's attorney and in defendant's memorandum substantiate this conclusion. An asserted privilege based upon the attorney-client relationship, with its absolute character, could not be defeated so readily.

Hence, it is incumbent upon the court to determine the nature of the privilege, if any, of communications between attorneys for parties who are sued by a common plaintiff on common issues (as involved here in plaintiff's various suits for infringement of the same patent), although in separate actions.

The objection to Interrogatory 22, based on privilege, may, of course, be obviated by deleting the words, "or attorneys or anyone else on its behalf," and substituting instead, "or anyone else other than attorneys on its behalf." A similar correction in Interrogatory 28 would eliminate the same objection.

■ Rule 33 governing interrogatories is subject to the same privilege limitation as Rules 26 and 34, since Rule 26 covers interrogatories, as well as oral testimony, and the privilege rule stated in Rule 26 carries over to Rule 33. Hickman v. Taylor, 3 Cir., 1945, 153 F.2d 212, 221, affirmed, 1947, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451.

■ The rules of evidence governing the actual trial as to privileged matters also apply to examinations by deposition or on interrogatories. 4 Moore, Federal Practice, ¶ 26.22, at 1084–85 (2d ed. 1950); Wild v. Payson, D.C.S.D.N.Y. 1946, 7 F.R.D. 495, 499. "Rule 43(a) governs the law of evidence applicable

in the federal courts. Three grounds of privilege recognized at the actual trial are also generally applicable upon discovery examinations. These grounds are: (1) privilege from self-incrimination; (2) professional privilege; (3) privilege as to matters injurious to the public interests." 4 Moore, supra, ¶ 26.-22, at 1085.

It is obvious that if the answers sought by interrogatories are privileged in any respect, they are likewise improper upon a discovery proceeding. The gates may not be opened now and then closed at the trial, for any harm would have already been done.

■ An examination of the few cases dealing directly with the question of privilege based upon the attorney-client relationship would seem to indicate that persons represented by different attorneys but conducting a "joint defense" may pool information without waiving this privilege. See, e. g., Schmitt v. Emery, 1942, 211 Minn. 547, 2 N.W.2d 413, 414, 139 A.L.R. 1242 (parties co-defendants; privilege sustained where joint interest in excluding particular evidence); Chahoon v. Commonwealth, 1871, 21 Grat. 822, 62 Va. 822 (parties jointly indicted but separately tried; privilege sustained). In Vance v. State, 1950, 190 Tenn. 521, 230 S.W.2d 987, the privilege was held inapplicable where the court found that the parties, though co-defendants, had no joint interest or defense. See also Smale v. United States, 7 Cir., 1924, 3 F.2d 101, 102, certiorari denied, 1924, 267 U.S. 602, 45 S.Ct. 462, 69 L. Ed. 808 (privilege intimated but not determined; parties found engaged in separate defense.)

In Schmitt v. Emery, supra, 2 N.W.2d at page 417, Justice Peterson stated:

"* * * Where an attorney furnishes a copy of a document entrusted to him by his client to an attorney who is engaged in maintaining substantially the same cause on behalf of other parties in the same litigation, without an express under-

standing that the recipient shall not communicate the contents thereof to others, the communication is made not for the purpose of allowing unlimited publication and use, but in confidence, for the limited and restricted purpose to assist in asserting their common claims. The copy is given and accepted under the privilege between the attorney furnishing it and his client. For the occasion, the recipient of the copy stands under the same restraints arising from the privileged character of the document as the counsel who furnished it, and consequently he has no right, and cannot be compelled, to produce or disclose its contents. Enthoven v. Cobb, 5 DeG. & Sm. 595, affirmed, 2 D.M. & G. 632. Consequently, counsel for Emery and LeRud acquired only the limited right to use the copy for the purpose of the argument to exclude the statement. Otherwise Northland's privilege was in no respect waived or impaired. Counsel for Emery and Le-Rud cannot be compelled without Northland's consent to produce or disclose the copy."

See also Note, Waiver of Attorney-Client Privilege on Inter-Attorney Exchange of Information, 63 Yale L.J. 1030 (1954).

A more restrictive interpretation of the attorney-client privilege may be found in Rediker v. Warfield, D.C.S.D. N.Y.1951, 11 F.R.D. 125, 127, and Radio Corporation of America v. Rauland Corp., D.C.N.D.Ill.E.D.1955, 18 F.R.D. 440, 443.

In any event, this court is not required to pass here on the precise issue of a possible attorney-client privilege, for defendant has neither proffered nor pressed its objections on this specific basis. Rather, as mentioned previously, Mon-

santo seeks to sustain its objections to plaintiff's interrogatories on the ground of a "work product" immunity. It is, therefore, this particular contention that must be considered and evaluated.

In Hickman v. Taylor, 1947, 329 U.S. 495, 508, 67 S.Ct. 385, 392, 91 L.Ed. 451, the Supreme Court declared that the attorney-client privilege did not extend to information obtained from a witness by an attorney acting for his client "in anticipation of litigation," or to "memoranda, briefs, communications and other writings prepared by counsel for his own use in prosecuting his client's case; * * * [nor] to writings which reflect an attorney's mental impressions, conclusions, opinions or legal theories." However, the court did render immune from discovery the trial preparation materials in question on the basis of their character as the attorney's "work product":

> " * * * This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs and countless other tangible and intangible ways—aptly though roughly termed by the Circuit Court of Appeals in this case as the 'work product of the lawyer.' " 329 U.S. at page 511, 67 S.Ct. at page 393.[1]

The work product rule remains closely identified with the attorney-client privilege since the work product represents efforts expended by the attorney during the course of the attorney-client relationship. Lundberg v. Welles, D.C.S.D. N.Y.1951, 11 F.R.D. 136, 138.

However, the two are clearly distinct and reflect different policy considerations. In Scourtes v. Fred W. Albrecht Grocery Co., D.C.N.D.Ohio E.D. 1953, 15 F.R.D. 55, 58, the underlying concepts of the attorney-client and "work

---

1. As the Court of Appeals had observed, "here we are dealing with intangible things, the results of the lawyer's use of his tongue, his pen, and his head, for his client. This was talked about as the 'work product of the lawyer' * * *." Hickman v. Taylor, 3 Cir., 1945, 153 F.2d 212, 223.

**578**

product" privileges were clearly distinguished:

> " * * * The purpose of the attorney-client privilege is to encourage full disclosure of information between an attorney and his client by guarantying the inviolability of their confidential communications. The 'work product of the attorney', on the other hand, is accorded protection for the purpose of preserving our adversary system of litigation by assuring an attorney that his private files shall, except in unusual circumstances, remain free from the encroachments of opposing counsel."

Hence, any waiver of the attorney-client privilege does not affect that protection granted an attorney's work product. Vilastor-Kent Theatre Corp. v. Brandt, D.C.S.D.N.Y.1956, 19 F.R.D. 522, 525; Connecticut Mut. Life Ins. Co. v. Shields, D.C.S.D.N.Y.1954, 16 F.R.D. 5, 8.

 The work product privilege purports, therefore, "to protect the legal craftsman in the product of his labors." Thompson v. Hoitsma, D.C.N.J.1956, 19 F.R.D. 112, 114–115. The immunity to disclosure continues until its confidential nature is terminated by public use or in order to promote the ends of justice. Thompson v. Hoitsma, supra at page 115 of 19 F.R.D. Thus, this protection, while considerable, is not absolute, and may be divested by a showing of good cause. Alltmont v. United States, 3 Cir., 1949, 177 F.2d 971; Scourtes v. Fred W. Albrecht Grocery Co., D.C.N.D.Ohio E.D.1953, 15 F.R.D. 55. It must be effectively demonstrated that production of the desired information is necessary, and that its denial will result in undue prejudice or hardship to the preparation of a party's case. Hickman v. Taylor, 1947, 329 U.S. 495, 509, 67 S.Ct. 385, 91 L.Ed. 451.

 It would seem that the exchange of "work products" among attorneys for parties sharing a common interest does not thereby render such information vulnerable to pre-trial discovery procedures. As Judge Murphy stated in Leonia Amusement Corp. v. Loew's, Inc., D.C. S.D.N.Y.1952, 13 F.R.D. 438, 441:

> "It may well be that certain items, not thus privileged or amounting to 'work products' on the face of plaintiffs' identifying reference to them in his affidavit, may nevertheless contain matter not subject to production. For example, communications to and from one defendant's counsel to a co-defendant's counsel * * * may contain matter privileged or amounting to 'work product' because they reflect communications from client to attorney * * * or from attorney to client * * * or work product of an attorney for his client * * *."

Likewise, in Smith v. Bentley, D.C. S.D.N.Y.1949, 9 F.R.D. 489, 490–491, Judge Hulbert expressed his reluctance "to require counsel for one defendant to testify concerning conferences with counsel for other defendants. Such a requirement might well prejudice defendants in the presentation of their case." [2] It would seem the court agreed, albeit impliedly, that no attorney-client relationship existed between the attorneys for the defendants. Nevertheless, it sustained the defendants' objections to the above line of questioning in a pre-trial examination, apparently doing so on the ground of a "work product" immunity.

In Vilastor-Kent Theatre Corp. v. Brandt, D.C.S.D.N.Y.1956, 19 F.R.D. 522, Judge Leibell extended the immunity of the "work product" rule to the interchange of a confidential legal memorandum between attorneys of *potential* co-parties in anticipation of prospective

---

2. "Although the situation in Hickman v. Taylor * * * was not precisely akin to the instant one, the Court believes that the reasoning of the Supreme Court supports the conclusion reached on this question." 9 F.R.D. at page 491.

litigation. See also 25 Geo.Wash.L.Rev. 371 (1957).

■ Transmirra's action against Sylvania was filed some four months prior to its present action against Monsanto. Sylvania is not a party to the instant action nor has it been named as a co-conspirator. Monsanto, on the other hand, was not a party to the former action against Sylvania nor was it named as a co-conspirator therein. Both actions, however, as previously mentioned, concern an alleged conspiratorial infringement of plaintiff's patent No. 2,-820,918. The Sylvania action was subsequently discontinued little over a month prior to the action against Monsanto. Interrogatories 22 and 28 now seek to probe the details of the assistance, if any, rendered by Monsanto with regard to Sylvania's legal defense strategy against Transmirra's charges.

Plaintiff Transmirra has recognized the community of interest linking Monsanto and Sylvania, especially in view of its conspiratorial allegations with respect to their concerted activities. One could not deny the advantages of, and even the necessity for, an exchange or pooling of information between attorneys representing parties sharing such a common interest in litigation, actual or prospective. At the time of the communications inquired into by Interrogatories 22 and 28, Sylvania had already been sued. Monsanto, allegedly one of the primary forces behind the infringement conspiracy complained of, could reasonably anticipate at that time an imminent action by Transmirra against Monsanto itself. Inter-attorney cooperation and pooling of information to prepare an adequate and effective defense for Sylvania would certainly inure as well to the benefit of Monsanto, which in all probability faced similar allegations. As has been stated, "such interchange is frequently necessary * * * to enable proper appraisal

of the conspiratorial acts often alleged in antitrust suits." 63 Yale L.J. 1030. See also 25 Geo.Wash.L.Rev. 371, 373. Plaintiff could have very well sued Sylvania and Monsanto in the same action, had it desired to do so. Instead, separate consecutive actions were brought in this court. Under all the circumstances herein presented, the activities of defendant's attorneys involved in Interrogatories 22 and 28 may properly be characterized as having been pursued "with an eye toward litigation." Hickman v. Taylor, supra at page 511 of 329 U.S., at page 394 of 67 S.Ct.

■ Nor would the fact that oral communications or conversations, rather than written materials, are involved seem to preclude application of the "work product" immunity.[3] There should be no essential difference between an exchange of written legal memoranda among attorneys and one of ideas and opinions developed during conversations or conferences.

In Byers Theaters, Inc. v. Murphy, D.C.W.D.Va.1940, 1 F.R.D. 286, 289, Judge Barksdale, in sustaining objections to certain interrogatories, wrote:

" * * * Nor does it seem fair or proper to me to allow one party to pry into and discover the results of conferences and communications between counsel for and agents of a party, or parties similarly situated, after the institution of suit and in preparation for trial."

See also Goldberg v. Travelers Fire Ins. Co., D.C.W.D.N.Y.1950, 11 F.R.D. 566, 568.

Consequently, in order to overcome the qualified privilege enjoyed by an attorney's work product, the "party asking for disclosure is bound to show that the situation is a rare one having exceptional features which make the disclosure necessary in the interests of justice * * *."

3. "This work [product] is reflected, of course, in * * * countless other tangible and intangible ways * * *."

Hickman v. Taylor, 1947, 329 U.S. 495, 511, 67 S.Ct. 385, 393, 91 L.Ed. 451.

4 Moore, Federal Practice, ¶ 26.23[8], at 1131 (2d ed. 1950). The mere showing of an inter-attorney exchange of the sought-after information would seem to be insufficient to establish the requisite "good cause."

But plaintiff argues that it has no investigative opportunity at all to discover what has transpired between the attorneys of Monsanto and Sylvania unless afforded such an opportunity through the propounded interrogatories; that the information sought is wholly and solely within the knowledge of the parties involved and their respective attorneys; that the attorneys represent witnesses hostile to plaintiff and unavailable except by direction of the court, in the face of the claim of privilege.

In essence, plaintiff really complains that the exchange of information between the attorneys for Monsanto and Sylvania imposes a hardship on it since such information is inaccessible to the plaintiff. Yet, to accept this argument as showing "good cause" would serve to eliminate effectively the qualified privilege character of the "work product." Surely, this line of argument can always be pursued under such circumstances, and, if successful, will completely frustrate the policy considerations underlying work product immunity.

Hence, "a stringent standard of good cause is applied, commensurate with the significance of the policy against the invasion of an attorney's freedom in the preparation of his case." Vilastor-Kent Theatre Corp. v. Brandt, supra, 19 F.R. D. at page 525; Connecticut Mut. Life Ins. Co. v. Shields, supra, 16 F.R.D. at page 8. The plaintiff has failed to satisfy this burden.

I am therefore constrained to conclude that the inquiries in Interrogatories 22 and 28, addressed to the information exchanged or communications had between attorneys for defendant and attorneys for Sylvania, concern work products which, under the doctrine of Hickman v. Taylor, 1947, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451, are immune to disclosure.

Accordingly, the objections to Interrogatories 22 and 28 are sustained. The original determination is altered as herein provided. These interrogatories, however, may be reformulated in a manner consistent with this opinion.

Settle order on notice.