STIX PRODUCTS, INC., Roysons, Inc., and the Firestone Tire and Rubber Company, Plaintiffs,

v.

UNITED MERCHANTS & MANUFAC-TURERS, INC., Defendant.

UNITED MERCHANTS & MANUFAC-TURERS, INC., Plaintiff,

v.

STIX PRODUCTS, INC., Defendant.

No. 64 Civil 1222.

United States District Court
S. D. New York.

May 12, 1969.

Kenyon & Kenyon, New York City, for defendant; John A. Fogarty, Jr., New York City, of counsel.

Cleary, Gottlieb, Steen & Hamilton, New York City, for Weiss & Klau, third-party witness; James C. Blair, New York City, of counsel.

## OPINION

HERLANDS, District Judge:

Interesting questions relating to the scope and applicability of the attorney-client and work-product privileges are raised by the instant motion made by the defendant United Merchants and Manufacturers, Inc. (UMM).

Pursuant to the agreement of counsel and the Court's ruling of February 24, 1969 (Transcript of Hearing, February 24, 1969, at 2–3), this motion is deemed one made under Fed.R.Civ.P. 53(e)(2) —objections to the report of the Special Master, filed on February 4, 1969. The following facts will facilitate understanding of the procedural genesis of the instant motion and the legal issues presented.

UMM originally moved for an order pursuant to Fed.R.Civ.P. 37(a) and 45(f), compelling third-party witness Weiss & Klau, being deposed by its president (William J. Oppenheim), to answer certain questions propounded during the course of the deposition and to identify and produce the various books, papers, and documents within its possession or control which are specified in paragraphs 11–13 of the subpoena duces tecum served on Weiss & Klau and their attorneys on May 22, 1968 and May 23, 1968.

Prior to the date of the deposition, counsel for Weiss & Klau met with counsel for UMM; and they reached an agreement as to which groups of documents would have to be produced at the deposition. Weiss & Klau immediately made available certain groups of documents to UMM for inspection and photocopying, and produced these same documents at the deposition. Under the agreement, UMM thereafter could seek further documents, and Weiss & Klau could resist further production. The agreement had the effect of obviating a motion to quash the subpoena before the commencement of the deposition. *See* Transcript of Deposition of Weiss & Klau and Standard Coated Products by William J. Oppenheim, June 27, 1968, p. 3. ("Tr.").

At the taking of the deposition, counsel for UMM (John A. Fogarty, Jr., Esq.) learned that Weiss & Klau had received an opinion—regarding the validity of the patent about which this lawsuit revolves—from the firm of Brumbaugh, Free, Graves & Donohue (now Brumbaugh, Graves, Donohue & Raymond, and hereinafter referred to as "Brumbaugh"). (Tr. p. 41). Mr. Fogarty then learned that Weiss & Klau sought and received advice from Cleary, Gottlieb, Steen & Hamilton (Weiss & Klau's general counsel, hereinafter referred to as "Cleary, Gottlieb") on how to answer customer's questions and letters regarding the patent. (Tr. p. 41). Mr. Fogarty thereafter asked whether, during the course of searching for records to be submitted in connection with the deposition, any letters were discovered from Weiss & Klau to Cleary, Gottlieb dealing with the patent. (Tr. p. 42). Oppenheim refused to answer, claiming that that information fell within the attorney-client privilege.

Mr. Fogarty explained that he wanted to know the subject or matter with respect to which the claim of privilege had been raised. (Tr. p. 42). Oppenheim refused to answer this, as well. Counsel for Weiss & Klau acknowledged that documents of the sort covered by Mr. Fogarty's initial question did, in fact, exist. (Tr. pp. 42–43). Mr. Fogarty

then explained that he wanted merely an identification of the documents—"[a]nd by that I mean who they were from and to whom they were directed, the date, general subject matter and to whom copies were sent." (Tr. p. 43). Counsel for the witness refused to permit such an identification, claiming that UMM had a sufficient description to enable it to obtain a ruling on the claim of privilege. (Tr. p. 44).

Mr. Fogarty, upon further questioning, was informed by counsel that the Brumbaugh opinion was the only document which fell within the groups of documents sought by paragraphs 12 and 13 of the subpoena, (Tr. p. 45), and that there were certain other correspondence between Weiss & Klau and Cleary, Gottlieb, covered by paragraph 11 of the subpoena. (Tr. pp. 45–47).

None of these documents was produced or inspected by UMM, nor have any of them been identified in the degree of specificity requested by counsel for UMM. In order to compel production and to have the documents identified (and, presumably, discussed) by the witness, UMM brought on the original motion under Rules 37 and 45.

The Court referred the matter to Gregory J. Potter, Esq., as Special Master, to hear and report to the Court. Mr. Potter heard argument; inspected *in camera* those documents which counsel for Weiss & Klau asserted were called for by paragraphs 11–13 of the subpoena; and filed his report. Mr. Potter recommended that the motion be denied in all respects. He was of the opinion that all of the documents he reviewed were protected by the attorney-client privilege. Moreover, he believed that further identification of the documents would circumvent and frustrate the very purpose of the attorney-client privilege, and, thus, should not be required.

## I.

At the oral argument of UMM's objections to the master's report, the Court directed that counsel for Weiss & Klau submit all documents which meet the description contained in paragraphs 11–13 of the subpoena and as to which Weiss & Klau are resisting production upon a claim of privilege. The Court has reviewed all of these documents as well as an affidavit submitted to the Court, *ex parte* by counsel for Weiss & Klau giving a brief description of each document.

These documents fall into three general groupings:

(1) Opinions rendered to Weiss & Klau regarding the validity of the patent;

(2) Correspondence between Weiss & Klau and its counsel relating to the instant litigation and to customer letters regarding infringement; and

(3) Correspondence between Cleary, Gottlieb and Brumbaugh generally relating to the subject matter of group (2) above.

## OPINIONS ON PATENT VALIDITY

The first category includes the Brumbaugh opinion referred to at the deposition. This also appears to be the only document within this group. Despite intimations in UMM's brief to the contrary, there are no opinions regarding patent validity rendered to Weiss & Klau by Cleary, Gottlieb or any other law firm (except Brumbaugh) among the documents submitted to either the Special Master or the Court.

UMM contends that opinions of counsel respecting patent invalidity which are based on analyses of public records do not fall within the attorney-client privilege. Thus, it asserts, the Special Master's report, recommending that the claim of attorney-client privilege be upheld with respect to the Brumbaugh opinion, is in error. Moreover, UMM submits, even if there is an attorney-client privilege available with respect to this opinion, the privilege must be deemed waived by virtue of the fact that

a copy of the opinion admittedly was sent on February 5, 1965 to Pennie, Edmonds, Martin, Taylor & Adams ("Pennie, Edmonds"), counsel for plaintiffs in this action.

Weiss & Klau, on the other hand, contend that they do not now (and did not before the Special Master) rely on the attorney-client privilege to justify their refusal to produce this opinion, but, rather, that they invoked the lawyer's work-product privilege.

UMM counters that the work-product privilege is inapplicable because Weiss & Klau is not a party to this lawsuit and the opinion was not prepared for use in any other litigation. Furthermore, any privilege that would be available must be deemed waived because of the voluntary disclosure of the opinion to Pennie, Edmonds.

*Applicability of the Work-Product Privilege*

■ The work-product privilege is not, as UMM suggests, limited to documents prepared by a party in the course of actual litigation with the party seeking discovery of the document. The Supreme Court recognized that there is no requirement that the documents be prepared after litigation is under way. In Hickman v. Taylor, 329 U.S. 495, 67 S. Ct. 385, 91 L.Ed. 451 (1947), the Court stated that the privilege extends to those documents prepared "with an eye toward litigation." 329 U.S. at 511, 67 S.Ct. 385. If the prospect of litigation is identifiable because of specific claims that have already arisen, the fact that, at the time the document is prepared, litigation is still a contingency has not been held to render the privilege inapplicable. *See, e.g.,* Natta v. Hogan, 392 F. 2d 686, 693 (10th Cir. 1968); Lichter v. Mellon-Stuart Company, 24 F.R.D. 397, 399 (W.D.Pa.1959); Developments in the Law—Discovery, 74 Harv.L.Rev. 940, 1044 (1961). *Cf.* Republic Gear Company v. Borg-Warner Corporation, 381 F.2d 551, 557 (2d Cir. 1967). And,

since the privilege thus appears to become operative upon preparation of the document, the additional circumstance that litigation has not yet materialized at the time discovery is sought should not alter the conclusion that the privilege is applicable. If the Brumbaugh opinion was prepared with litigation in mind, and is a proper subject of protection, the Court holds that the privilege attached.

■ UMM has not asserted that the Brumbaugh opinion is not of the character intended to be covered by the work-product privilege. Indeed, the Court finds that it is work-product because it is a writing prepared by an attorney, couched in legal terminology, embodying a compendium of the attorney's mental impressions and beliefs, and reflects the attorney's opinion which is based on legal analysis and reasoning and involved the exercise of legal skills. *Cf.* Hickman v. Taylor, *supra,* at 510–511, 67 S.Ct. 385.

The facts in this case also establish that the preparation of the Brumbaugh opinion was induced by the issuance to UMM of the patent in question and the substantial likelihood that Weiss & Klau would be called upon to defend an infringement action based on the existence of that patent.

The patent was issued on April 21, 1964. A declaratory action challenging the validity of the patent and an infringement action (both now consolidated in the instant action) were filed that same day. UMM also immediately began placing advertisements in trade and general newspapers announcing its intention "to protect and enforce its patent rights."

The Brumbaugh opinion was dated May 11, 1964. About that date, Weiss & Klau began receiving inquiries from customers relating to the effect of UMM's patent, advertising, and infringement action on their purchases of Weiss & Klau's products.

By letter dated July 13, 1964, UMM informed Weiss & Klau as follows:

"* * * United Merchants and Manufacturers, Inc., intends to enforce its patent rights against all infringers at every level of manufacture and distribution. We are advised that products sold by you may infringe this patent.

The validity of the patent is presently the subject of litigation in actions pending in the United States District Court for the Southern District of New York (File Nos. 1222/1964; 1224/1964; 1317/1964). If the patent is judicially sustained, as we believe it will be, we intend to enforce all of our rights, including the assertion of damages from the date of issue of the patent."

Under these circumstances, the Brumbaugh opinion undoubtedly was prepared in anticipation of litigation. It constitutes work-product.

*Waiver*

■ The Court rejects UMM's argument that this privilege was waived by the voluntary disclosure to the attorneys for plaintiffs herein. The opinion was not made available to Pennie, Edmonds until February 5, 1965—a date subsequent to Weiss & Klau's receipt of UMM's threat of litigation. That letter made plaintiffs' success in this action more than a matter of intellectual curiosity to Weiss & Klau. At stake are valuable economic interests. A decision favorable to UMM here would expose Weiss & Klau to liability as an infringer —Weiss & Klau being a customer of plaintiff Roysons, Inc. Thus, its interest in this litigation is substantially identical with plaintiffs' and perhaps can be considered "joint".

Under circumstances similar to these, disclosure to counsel for a party with interests adverse to that of the party seeking discovery does not constitute a waiver. *E. g.*, Transmirra Products Corporation v. Monsanto Chemical Company, 26 F.R.D. 572 (S.D.N.Y.1960); Vilas-

tor-Kent Theatre Corporation v. Brandt, 19 F.R.D. 522 (S.D.N.Y.1956); Note, Waiver of Attorney-Client Privilege on Inter-Attorney Exchange of Information, 63 Yale L.J. 1030, 1035–1036 (1954).

■ The presence of a community of interest between Weiss & Klau and plaintiffs distinguishes D'Ippolito v. Cities Service Company, 39 F.R.D. 610 (S.D.N.Y.1965), strongly relied on by UMM. There the disclosure was made to one not (even potentially) having similar interests. Moreover, the conclusion reached in *D'Ippolito* was the result of equating the work-product privilege with the attorney-client privilege, though the purposes and policies served by these privileges are distinct and require different rules as to waiver. Connecticut Mutual Life Insurance Company v. Shields, 16 F.R.D. 5, 8 (S.D.N.Y. 1954). The work-product privilege should not be deemed waived unless the disclosure is inconsistent with maintaining secrecy from possible adversaries. Developments in the Law—Discovery, 74 Harv.L.Rev. 940, 1045 (1961). A postscript to the transmittal letter from Brumbaugh to Pennie, Edmonds clearly shows that the confidentiality of the work-product, vis-à-vis any potential adversary, was to be maintained:

"It is understood that the enclosure is for your office use only and not for other publication either directly or indirectly, including knowledge of its delivery to you."

The Court holds that the privilege has not been waived.

In the absence of the required showing by UMM that this document is essential to the preparation of its case, the work-product privilege protects against discovery of the Brumbaugh opinion.

### CLEARY, GOTTLIEB AND BRUMBAUGH—WEISS & KLAU CORRESPONDENCE

■ Extensive discussion need not be devoted to the documents which fall

within the second category—communications between Weiss & Klau and its counsel (Cleary, Gottlieb and Brumbaugh). The Court has reviewed each document, *in camera*. All of them are letters either seeking or giving legal advice. As such, they are conventional exemplars of privileged communications immune against discovery. To the extent that those papers which were attached to these letters do not constitute or contain legal advice, counsel for Weiss & Klau has represented to the Court that they were made available to UMM. There is no indication from any document in this category that the document was disclosed to any third-person, or that the confidentiality of the communication was otherwise waived. The attorney-client privilege as to all of these documents is in full force and effect.

## BRUMBAUGH-CLEARY, GOTTLIEB CORRESPONDENCE

█ The documents within this group are protected from discovery by UMM under both the attorney-client and work-product privileges. There are only two documents of significance within this category—both communications from Brumbaugh to Cleary, Gottlieb. Portions of one such letter contain legal advice of the same nature as that in correspondence from Cleary, Gottlieb to Weiss & Klau (group 2 above). As a communication between co-counsel containing legal advice, this much of that letter constitutes matter protected by the attorney-client privilege. *Cf.* Note, 63 Yale L.J., *supra* at 1036.

█ The remainder of this letter and the other document relate to the instant litigation and involve traditional work-product material insofar as it is a written communication between co-counsel for a potential litigant. No disclosure of any kind appears to have been made of the contents of either of these documents. The claim of privilege must be sustained.

## II.

█ UMM presses the point that the Special Master was in error in not recommending that a more specific identification be required of each document to which a claim of privilege has been made. The Court agrees with the Special Master that even the identification of a communication between attorney and client in terms of the date and subject might well tend to defeat the very purpose of the privilege. It may be tactically relevant for UMM to know (and correspondingly important for Weiss & Klau to keep secret) the mere fact that on a certain date Weiss & Klau requested advice with respect to a specific subject, or that on a certain date advice was rendered on a specific subject, though the precise inquiry or advice given remains secret. The only possible reason for requiring such additional identification (in view of the circumstance that the documents themselves have already been held to be privileged) is to enable UMM to prove waiver. Unless UMM has some probative basis for believing that certain (albeit presently unidentifiable) documents otherwise privileged, were disclosed to a third-party, the Court concludes that the probable injury to Weiss & Klau resulting from such identification outweighs the slender possibility that UMM, upon receiving such identification, will be able to show waiver. Absent any contraindication, the Court accepts the representation of counsel for Weiss & Klau that none of these documents had, in fact, been disclosed to a third-party. UMM has sufficient identification from the various motion papers and this Court's opinion to investigate the possibility of waiver and to determine for itself the soundness of the Court's conclusion that all of the documents are privileged.

## III.

Since the Court has sustained the claim of privilege as to all of the submitted documents, and since Weiss &

Klau is not a party to this litigation, the Court orders the return of these documents to counsel, who shall hold them in their custody pending the final outcome of this action. The *ex parte* affidavit of James C. Blair, Esq., sworn to February 28, 1969, which contains a document-by-document description of the privileged material, is ordered impounded and sealed, subject to further court order, pending the final outcome of this action, at which time it will be ordered released and returned to counsel.

Settle order on notice in accordance with the views expressed in this opinion.